J-A04022-18

2018 PA Super 175

COMMONWEALTH OF
PENNSYLVANIA

v.

WILLIAM PEREZ DIAZ

Appellant

: IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
:
:
:
:
:
:
:
: No. 893 MDA 2017

Appeal from the Order Entered April 25, 2017
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0001175-2013,
CP-38-CR-0001838-2012

BEFORE: STABILE, J., NICHOLS, J., and RANSOM, J.[*]

OPINION BY NICHOLS, J.:                    **FILED JUNE 21, 2018**

Appellant William Perez Diaz appeals from the order holding him in contempt and imprisoning him for failure to pay court-ordered fines and costs. Appellant challenges whether the trial court erred by not appointing him counsel and without making a finding of fact that he had the financial ability to pay. Because the court erred, we vacate the order below and remand for appointment of counsel and a new hearing, at which the trial court must render appropriate findings on Appellant's financial ability to pay the fines and costs.

At docket no. 1838-2012, on July 3, 2013, Appellant entered a plea of guilty to retail theft and was ordered to pay $23.98 in restitution, $400 in

_____

[*] Retired Senior Judge assigned to the Superior Court.

fines, and $1,686.35 in costs. The trial court imposed a sentence of 100 days' to eighteen months' imprisonment, but immediately paroled him. Order, 7/3/13. At some point, Appellant paid the restitution in full.

At docket no. 1175-2013, on December 18, 2014, Appellant entered a plea of guilty to use of or possession with intent to use drug paraphernalia, and the trial court ordered him to pay $100 in fines and $1,536 in costs. The court sentenced Appellant to serve one year of probation.

Both dockets reflect several entries for hearings on a violation of probation or parole, as well as bench warrants and delinquency notices. In pertinent part, the docket for no. 1838-2012 reflects a November 2, 2016 entry for "contempt fines and costs scheduled 01/30/2017 9:00 a.m." Docket at 15. The trial court subsequently scheduled a delinquency hearing for January 30, 2017. Appellant failed to appear for the hearing, and the court issued a bench warrant.

On April 6, 2017, Appellant appeared at a bench warrant hearing. At the hearing, the court asked Appellant how much he could afford for bail. N.T. Bench Warrant Hr'g, 4/6/17, at 3. Appellant responded that he knew someone in Reading, Pennsylvania, who could provide "maybe fifty to a hundred dollars and (inaudible) maybe twenty dollars."[1] *Id.* at 4. The trial court informed Appellant of his right to counsel, vacated the bench warrant, and set bail at

---

[1] The record does not clarify the inaudible portion of the transcript.

$100 for each docket, for a total of $200 cash. *Id.* at 2, 4. The court also scheduled a contempt hearing. The court did not explicitly advise Appellant that he could be imprisoned if he failed to make bail. Appellant did not pay bail, so he remained in prison.

At the April 24, 2017 contempt hearing, Appellant appeared without counsel. The trial court did not colloquy Appellant about proceeding *pro se*, and Appellant did not waive his right to counsel. The Commonwealth was represented only by a probation officer from the Lebanon County Collections and Disbursement Unit.

We reproduce the entirety of the hearing after the trial court swore Appellant under oath:

> [Probation officer]: Your Honor, this is the second time [Appellant] is scheduled for a contempt hearing. Previously one bench warrant issued. Payment plan is currently set at $100 a month per agreement that he signed back on January 11, 2016.
>
> [The court]: William [addressing Appellant], did anybody come with any money?
>
> [Appellant]: I did get a letter from . . . that in Reading he does have a job for me . . . (inaudible)
>
> [The court]: The [c]ourt makes the following findings. This is the second time this has been scheduled. One previous bench warrant. Payments were set at $100 a month per an agreement in January 2016. He's failed to pay since a year ago, over a year ago—March. With a balance of $710.33 in one case and $1636.00 in another. The [c]ourt finds [Appellant] in contempt and directs he be incarcerated in the Lebanon County Correctional Facility for a period of thirty days. He may purge himself of this contempt on [docket no. 1838-2012] by paying $100 on the account. And on [docket no. 1175-2013] by paying $150. The [c]ourt has no objection to immediate work release. All right.

[Probation officer]: Your Honor, if you could add a [c]ourt [o]rdered amount.

[The court]: And the [c]ourt ordered amount of $100 a month.

N.T. Contempt Hr'g, 4/24/17, at 2-3 (ellipses in original).

The trial court subsequently entered the following order clarifying the inaudible portion of the hearing:

The record in this matter is AMENDED such that, in the portion of the April 24, 2017 transcript where [Appellant's] statement is. "inaudible," the record shall reflect that the [Appellant] stated that no one came that day with any money to pay his fines and costs, that he had received a letter from a friend stating that he had a possible job constructing pallets available in Reading, and that he could continue to sell his blood plasma to make some money.

Order, 8/22/17.

On April 25, 2017, the trial court entered an order holding Appellant in contempt and sentencing him to thirty days' imprisonment with a total purge condition of $250. The order did not set forth any legal reasoning, findings of fact, or conclusions of law.

On May 2, 2017, Appellant filed a counseled petition for a writ of *habeas corpus*, which alleged, among other reasons, that his imprisonment was unlawful because the trial court failed to (1) find he had the financial resources to pay the fines and costs but willfully failed to do so, and (2) appoint counsel. Appellant's Pet. for Writ of *Habeas Corpus*, 5/2/17, at 4-6. Appellant, however, was released from prison on May 4, 2017, and thus Appellant filed

a notice of withdrawal of his petition for writ of *habeas corpus* on May 9, 2017. Appellant's Notice of Withdrawal of Pet. for Writ of *Habeas Corpus*, 5/9/17.

Appellant timely appealed from the April 25, 2017 order on May 22, 2017, and timely filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court responded with two-sentence order merely stating that "upon consideration" of Appellant's Rule 1925(b) statement, "we hereby affirm our Order dated April 24, 2017," which was entered on April 25, 2017. Order, 8/1/17.[2] The second sentence of the court's order instructed the clerk of courts to transmit the record to this Court. *Id.*

Appellant raises the following issues, which we have reordered as follows:

> 1. Did the trial court err by incarcerating [Appellant] for civil contempt without either providing him with counsel or obtaining a knowing, intelligent, and voluntary waiver of that right?
>
> 2. Did the trial court err by holding [Appellant] in civil contempt for failure to pay his court fines and costs and incarcerating him without inquiring into his ability to pay?

---

[2] The trial court's order does not comply with Pa.R.A.P. 1925(a), which states:

> the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

Pa.R.A.P. 1925(a)(1).

3. Did the trial court abuse its discretion by holding [Appellant] in contempt when the evidence on the record demonstrated that he was unable to pay?

4. Did the trial court abuse its discretion by setting a dollar amount by which [Appellant] could purge his contempt and be released from incarceration without finding beyond a reasonable doubt that [Appellant] had the present ability to comply with the Court's order and meet that purge condition?

5. Did the trial court err by placing [Appellant] on a payment plan without inquiring into his financial circumstances and determining that the ordered payment was within his means and did not unreasonably impose a financial hardship?

Appellant's Brief at 5 (issues reordered to facilitate disposition).[3]

## I. Appellant's Right to Counsel

In support of Appellant's first issue, he raises three arguments. We summarize two, as they are dispositive. Appellant initially acknowledges that because this is a civil contempt proceeding, he has no right to counsel under the Sixth Amendment of the United States Constitution.[4] Appellant's Brief at 19. Instead, Appellant asserts, he has right to counsel under the Due Process Clause of the Fourteenth Amendment.[5] *Id.* Appellant suggests that under

---

[3] The Pennsylvania Association of Criminal Defense Lawyers, Pennsylvania Legal Aid Network, and National Coalition for a Civil Right to Counsel have filed *amicus* briefs raising arguments in support of Appellant.

[4] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

[5] In pertinent part, it provides that "nor shall any state deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

- 6 -

the three-factor balancing test set forth in **Turner v. Rogers**, 564 U.S. 431 (2011), he should have been appointed counsel. Appellant's Brief at 20-21. For the first factor, he points out that "loss of liberty through imprisonment" alone warrants the right to counsel. **Id.** at 21. With respect to the second factor, Appellant contends that without appointed counsel, "there is a substantial risk that unrepresented individuals who have not willfully refused to pay will be wrongfully held in contempt and incarcerated." **Id.** Lastly, he asserts that there are no countervailing interests that would justify not appointing counsel. **Id.** at 21-22. Appellant points out the asymmetry between (1) the Commonwealth with its expertise and resources, and (2) an uncounseled defendant charged with contempt for nonpayment. **Id.** at 22. Appellant maintains appointment of counsel would promote fairness in the proceedings and ameliorate the asymmetry. **Id.**

The Commonwealth acknowledges that "counsel must be assigned" in a civil contempt proceeding for nonpayment of fines and costs because there is a likelihood of imprisonment. Commonwealth's Brief at 5, 9.[6] The

---

[6] Both Appellant and the Commonwealth agree that Appellant was subject to an order of civil contempt. **See** Appellant's Brief at 12; Commonwealth's Brief at 5. We acknowledge that some caselaw suggests that contempt from a failure to pay court-ordered fines and costs could be criminal in nature. But because the parties agree the contempt is civil in nature and have not argued otherwise, we decline to define the underlying contempt order.

We add that although court-imposed fines and costs are not for the benefit of a private party, the typical purpose of a contempt proceeding for

Commonwealth does not address the **Turner** factors discussed by Appellant. The Commonwealth, although conceding that Appellant is entitled to counsel, nonetheless argues, as discussed in further detail below, that Appellant waived his right to counsel. **Id.** at 10.[7]

Ordinarily, a failure to preserve the arguments raised on appeal would raise concerns about appellate waiver. **See generally** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). But our courts have long "recognized that the failure to preserve an issue for appeal may be excused when a strong public interest

_____

failure to pay fines and costs would be to compel the contemnor to comply with the court's order and not punish the contemnor for disobeying the order imposing fines and costs. **See Commonwealth v. Rosser**, 407 A.2d 857, 860 (Pa. Super. 1979) (concluding that the Commonwealth has two remedies—contempt and a civil proceeding—for a failure to pay fines and costs, and the Commonwealth elected "civil contempt, for the dominant purpose was prospectively to coerce [the defendant] as the contemnor to comply with an order of the court, not to punish him for disobedience of the order" (citations and footnote omitted)). But a contemnor's ability to comply with a payment order may "mark[] a dividing line between civil and criminal contempt," because an incorrect classification of the contempt proceeding as civil "can increase the risk of wrongful incarceration by depriving the defendant of the procedural protections (including counsel) that the Constitution would demand in a criminal proceeding." **Turner**, 564 U.S. at 445. Given the absence of counseled argument on the issue, we do not address whether the proceeding should be labeled criminal.

[7] The Commonwealth does not argue that Appellant failed to raise his arguments to the trial court. Even if it had, we would hold that the Commonwealth waived any such waiver argument. **See Commonwealth v. Williams**, 141 A.3d 440, 464 n.23 (Pa. 2016) (stating the "Commonwealth's waiver argument . . . is waived, as the Commonwealth raised it for the first time on appeal").

outweighs the need to protect the judicial system from improperly preserved issues." **Klein v. Com., State Emps.' Ret. Sys.**, 555 A.2d 1216, 1220 n.6 (Pa. 1989) (plurality). One such strong public interest is whether a party is entitled to counsel in a civil contempt proceeding. **See Turner**, 564 U.S. at 438 (resolving right to counsel issue that was raised for the first time on direct appeal in state court). Additionally, a failure by an appellant to object to the trial court's compliance with procedural rules may, under appropriate circumstances, be raised for the first time on appeal. **See Bell Fuel Corp. v. Cattolico**, 544 A.2d 450, 454 n.3 (Pa. Super. 1988) (refusing to conclude appellant "waived an objection to the trial court following a procedure which was never fully described and which was both unanticipated and incorrect").

## II. Right to Counsel Under the Due Process Clause

Having resolved that the issue of whether Appellant is entitled to court-appointed counsel is properly before this Court, we discuss **Turner**. In **Turner**, the United States Supreme Court addressed "whether the Fourteenth Amendment's Due Process Clause requires the State to provide counsel (at a civil contempt hearing) to an **indigent** person potentially faced with such incarceration." **Turner**, 564 U.S. at 435.

In that case, the defendant was subject to a South Carolina family court order requiring him to pay $51.73 per week in child support. **Turner**, 564 U.S. at 436. The defendant failed to comply, and thus the court held a civil contempt hearing, at which both parties appeared without counsel. **Id.** at

437. The court advised the defendant that he was $5,728.76 in arrears and gave him an opportunity to speak,[8] after which the court held him in contempt. *Id.*

The trial court in *Turner* sentenced the defendant to twelve months' imprisonment with a purge condition of having a "zero balance" on or before his release. *Turner*, 564 U.S. at 437. "The court made no express finding concerning [the defendant's] ability to pay his arrearage . . . . Nor did the judge ask any followup questions or otherwise address the ability-to-pay issue." *Id.* at 437-48. The court's contempt order did not indicate whether the defendant had the ability to make the support payments. *Id.* at 438.

The defendant obtained *pro bono* counsel and appealed to the South Carolina Supreme Court on the basis that the Federal Constitution "entitled him to counsel at his contempt hearing." *Turner*, 564 U.S. at 438. After the

---

[8] The defendant in *Turner* stated:

> Well, when I first got out, I got back on dope. I done meth, smoked pot and everything else, and I paid a little bit here and there. And, when I finally did get to working, I broke my back, back in September. I filed for disability and SSI. And, I didn't get straightened out off the dope until I broke my back and laid up for two months. And, now I'm off the dope and everything. I just hope that you give me a chance. I don't know what else to say. I mean, I know I done wrong, and I should have been paying and helping her, and I'm sorry. I mean, dope had a hold to me.

*Turner*, 564 U.S. at 437.

defendant completed his sentence, the state Supreme Court held that he had no right to counsel. *Id.*

The United States Supreme Court granted the defendant's petition for *certiorari*. First, the Court held that although the defendant had completed his prison sentence, the case was not moot because the issue was capable of repetition while evading review. *Turner*, 564 U.S. at 439.

Second, the Court addressed whether the Due Process Clause gave an indigent defendant a right to appointed counsel. *Turner*, 564 U.S. at 441. The Court initially categorized the contempt proceeding as a civil proceeding. *Id.* at 444. The *Turner* Court then examined three factors relevant to formulating the "specific safeguards [that] the Constitution's Due Process Clause requires in order to make a civil proceeding fundamentally fair." *Id.* (citation omitted). Those factors are "(1) the nature of the private interest that will be affected, (2) the comparative risk of an erroneous deprivation of that interest with and without additional or substitute procedural safeguards, and (3) the nature and magnitude of any countervailing interest in not providing additional or substitute procedural requirements." *Id.* at 444-45 (quotation marks, citations, and brackets omitted).

A. *The Private Interest of Freedom from Bodily Restraint and the Risk of Erroneous Deprivation of that Freedom*

The *Turner* Court noted that the potential for imprisonment weighs heavily in favor of a right to counsel:

> The "private interest that will be affected" argues strongly for the right to counsel that [the defendant] advocates. That interest consists of an indigent defendant's loss of personal liberty through imprisonment. The interest in securing that freedom, the freedom from bodily restraint, lies at the core of the liberty protected by the Due Process Clause. And we have made clear that its threatened loss through legal proceedings demands due process protection.
>
> Given the importance of the interest at stake, it is obviously important to assure accurate decisionmaking in respect to the key "ability to pay" question. Moreover, the fact that ability to comply marks a dividing line between civil and criminal contempt, reinforces the need for accuracy. That is because an incorrect decision (wrongly classifying the contempt proceeding as civil) can increase the risk of wrongful incarceration by depriving the defendant of the procedural protections (including counsel) that the Constitution would demand in a criminal proceeding.

*Turner*, 564 U.S. at 445 (citations and some quotation marks omitted).

B. *Nature and Magnitude of Three Countervailing Interests*

The *Turner* Court then summarized three interests for not mandating court-appointed counsel for an indigent defendant:

> First, the critical question likely at issue in these cases concerns . . . the defendant's ability to pay. That question is often closely related to the question of the defendant's indigence. But when the right procedures are in place, indigence can be a question that in many—but not all—cases is sufficiently straightforward to warrant determination prior to providing a defendant with counsel, even in a criminal case. Federal law, for example, requires a criminal defendant to provide information showing that he is indigent, and therefore entitled to state-funded counsel, **before** he can receive that assistance.
>
> Second, sometimes, as here, the person opposing the defendant at the hearing is not the government represented by counsel but the custodial parent **un** represented by counsel. . . .
>
> A requirement that the State provide counsel to the noncustodial parent in these cases [*i.e.*, cases in which the custodial parent is

- 12 -

not represented by counsel,] could create an asymmetry of representation that would alter significantly the nature of the proceeding. Doing so could mean a degree of formality or delay that would unduly slow payment to those immediately in need. And, perhaps more important for present purposes, doing so could make the proceedings less fair overall, increasing the risk of a decision that would erroneously deprive a family of the support it is entitled to receive. The needs of such families play an important role in our analysis.

Third, as the Solicitor General points out, there is available a set of substitute procedural safeguards, which, if employed together, can significantly reduce the risk of an erroneous deprivation of liberty. They can do so, moreover, without incurring some of the drawbacks inherent in recognizing an automatic right to counsel. Those safeguards include (1) notice to the defendant that his ability to pay is a critical issue in the contempt proceeding; (2) the use of a form (or the equivalent) to elicit relevant financial information; (3) an opportunity at the hearing for the defendant to respond to statements and questions about his financial status, (*e.g.*, those triggered by his responses on the form); and (4) an express finding by the court that the defendant has the ability to pay. [The Government] does not claim that they are the only possible alternatives, and this Court's cases suggest, for example, that sometimes assistance other than purely legal assistance (here, say, that of a neutral social worker) can prove constitutionally sufficient. But the Government does claim that these alternatives can assure the fundamental fairness of the proceeding even where the State does not pay for counsel for an indigent defendant.

*Turner*, 564 U.S. at 446-48 (some quotation marks and citations omitted).

C. *Indigent Contemnor Has No Automatic Right to Court-Appointed Counsel Under the Due Process Clause*

After balancing the factors, the United States Supreme Court held the

following:

In our view, a **categorical** right to counsel in proceedings of the kind before us would carry with it disadvantages (in the form of unfairness and delay) that, in terms of ultimate fairness, would deprive it of significant superiority over the alternatives that we

> have mentioned. We consequently hold that the Due Process Clause does not **automatically** require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration (for up to a year). In particular, that Clause does not require the provision of counsel where the opposing parent or other custodian (to whom support funds are owed) is not represented by counsel and the State provides alternative procedural safeguards equivalent to those we have mentioned (adequate notice of the importance of ability to pay, fair opportunity to present, and to dispute, relevant information, and court findings).

*Turner*, 564 U.S. at 448 (first emphasis added). Thus, notwithstanding the potential for one year of imprisonment, the Supreme Court declined to mandate court-appointed counsel if the opposing party was not represented by counsel and there were alternative procedural safeguards. *Id.* But the *Turner* Court declined to "address civil contempt proceedings where the underlying child support payment is owed to the **State**, [because] [t]hose proceedings more closely resemble debt-collection proceedings. The government is likely to have counsel or some other competent representative." *Id.* at 449 (emphasis added).

D. *Other State Cases Addressing Contempt for Failure to Pay Court-Ordered Costs to the State*

In ***Ex parte Gonzales***, 945 S.W.2d 830 (Tex. Crim. App. 1997) (*en banc*), a case that predates *Turner*, the Texas Court of Criminal Appeals addressed whether a defendant was entitled to court-appointed counsel for

costs payable to the state.[9] In *Gonzales*, the defendant was convicted and sentenced, expressed her intent to appeal, and requested court-appointed counsel. *Id.* at 831. At an indigency hearing, the defendant appeared *pro se*, and the trial court found she had limited income. *Id.* The court ordered the *pro se* defendant to pay $50 per week to the court for court-appointed appellate counsel and a statement of facts prepared by the court reporter. *Id.*

The defendant, however, failed to make the court-ordered payments, and the court held a contempt hearing. *Gonzales*, 945 S.W.2d at 832. At the hearing, the *pro se* defendant explained why she was not making the payments: "she was employed at Taco Bell working eight hours a day, six days a week. She was living by herself and paying rent on a house her father vacated." *Id.* The court stated that she was not indigent and would not appoint her an attorney. *Id.*

According to the *Gonzales* Court:

The record of the hearing demonstrates that [the defendant] did not understand the proceeding and repeatedly asked the judge for explanations. [The defendant] did not put on any evidence nor did she argue in her own behalf. The judge held [the defendant] in contempt and sentenced her to ninety days in jail. The judge provided that [the defendant's] sentence would be suspended after thirty days if [she] paid . . . $750.00, the amount past due on her court ordered payments.

*Gonzales*, 945 S.W.2d at 832.

---

[9] The Texas Court of Criminal Appeals is the court of last resort for criminal cases.

On appeal, the defendant claimed, among other things, that "the trial court's failure to advise her of her right to counsel at the contempt hearing deprived her of due process under" the Sixth and Fourteenth Amendments of the United States Constitution, as well as similar provisions in the Texas Constitution.[10] *Gonzales*, 945 S.W.2d at 834-35. The Court acknowledged that it had not previously resolved whether a defendant had a right to counsel at a contempt hearing, but noted that other state courts have addressed the "issue in the context of a contempt hearing resulting from failure to pay child support." *Id.* at 835.

After summarizing relevant Texas law, the *Gonzales* Court stated that because "contempt proceedings are quasi-criminal in nature . . . proceedings in contempt cases should conform as nearly as practicable to those in criminal cases." *Gonzales*, 945 S.W.2d at 836 (citation omitted). The Court further held that

> the right to counsel turns on whether deprivation of liberty may result from a proceeding, not upon its characterization as "criminal" or "civil." "No person may be deprived of his liberty who has been denied the assistance of counsel . . . ." *Argersinger v. Hamlin*, 407 U.S. 25, 37-38, 92 S. Ct. 2006, 2013, 32 L. Ed. 2d 530 (1972). Contemnors are entitled to procedural due process protections before they may be held in contempt; this is especially true when the results of a contempt proceeding may lead to incarceration. We note that several federal circuits addressing this issue have held that a defendant in a contempt proceeding who faces imprisonment as a result of

---

[10] We note that the defendant in *Gonzales* raised this issue for the first time on appeal.

the proceeding is entitled to representation. ***See, e.g.***, ***United States v. Anderson***, 553 F.2d 1154, 1155 (8th Cir. 1977) (stating due process requires right to counsel be extended to contempt proceeding where defendant may be imprisoned); ***In re Di Bella***, 518 F.2d 955, 959 (2nd Cir. 1975) (holding defendant entitled to counsel in civil contempt proceeding where defendant faced with prospect of imprisonment); ***see also United States v. Bobart Travel Agency, Inc.***, 699 F.2d 618, 620 (2nd Cir. 1983) (recognizing "contempt is an area of the law in which counsel's advice is often indispensable"); ***Brooks v. United States***, 686 A.2d 214, 233 (D.C. App. 1996) (Ruiz, J., concurring) (due process requires assistance of counsel in contempt proceedings that result in incarceration); ***Wisconsin v. Pultz***, 206 Wis. 2d 111, 556 N.W.2d 708, 717 (1996) (trial court must advise pro se defendant in contempt proceeding which might result in incarceration that he is entitled to be represented by an attorney, and if found indigent, entitled to appointment of counsel).

***Id.*** at 836 (some quotation marks, brackets, and citations omitted).

The ***Gonzales*** Court, based on these precedents, held that because the defendant was held in contempt and jailed due to her failure to make court-ordered payments, her liberty was deprived. ***Gonzales***, 945 S.W.2d at 836. In conjunction with Texas legal authorities providing that criminal contemnors are entitled to legal representation, the Court held that the defendant "had a right to be represented by counsel at the contempt proceeding." ***Id.*** The ***Gonzales*** Court thus ordered that the defendant be released because the conviction for contempt and resulting incarceration was void.

In ***State v. Stone***, 268 P.3d 226 (Wash. Ct. App. 2012), the trial court, following a guilty plea to possession of narcotics and theft, imposed on the defendant a jail sentence and a "legal financial obligation" (LFO) of $2,860, which primarily was comprised of various court costs. ***Id.*** at 228. The

resulting procedural history is lengthy but in sum, the defendant appeared without counsel at several hearings regarding his failure to make LFO payments. *Id.* at 228-29.

Eventually, the trial court appointed counsel for the defendant. *Stone*, 268 P.3d at 229. The court then held a hearing at which it found that the defendant willfully failed to pay, but made no findings on the defendant's financial ability to pay the LFOs. *Id.* at 230. The defendant appealed.

The *Stone* Court initially held that the proceedings to enforce payment of the LFOs, under Washington law, were criminal in nature. *Stone*, 268 P.3d at 230. The Court acknowledged that indigent defendants had a right to appointed counsel for probation and parole revocation hearings, but that right was derived not from "the right of an accused to counsel in a criminal prosecution, but . . . the more limited due process right of one who is a probationer or parolee only because he has been convicted of a crime." *Id.* at 233 (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 789 (1973)). The existence of that right to appointed counsel, the Court concluded, must be determined on a case-by-case basis by the trial court. *Id.*

The *Stone* Court, addressing the case at hand—involving LFO enforcement proceedings—noted that such proceedings, like probation and parole revocation hearings, occur post-prosecution. *Stone*, 268 P.3d at 233. The *Stone* Court held that under Washington law, "LFO enforcement proceedings subject the convicted felon to a modification of his original

sentence—i.e., imprisonment—and trigger due process concerns." ***Id.*** (footnote omitted). Accordingly, the Court examined whether the defendant was entitled to court-appointed counsel. ***Id.*** at 234.

The ***Stone*** Court first discussed ***Tetro v. Tetro***, 544 P.2d 17 (Wash. 1975), a Washington Supreme Court case that resolved "whether the right to appointed counsel for indigent individuals extended to contempt proceedings for failure to pay child support." ***Stone***, 268 P.3d at 234. In holding that such individuals had a right to court-appointed counsel, the Court in ***Tetro*** noted that the label given to a particular proceeding—whether criminal, quasi-criminal, or civil—was a meaningless distinction. ***Id.*** Rather, the ***Tetro*** Court observed, the critical inquiry is whether the deprivation of liberty involved immediate imprisonment. ***Id.*** (citing ***Tetro***, 544 P.2d at 20 n.1). At the LFO enforcement proceeding, the ***Stone*** Court acknowledged that the defendant (1) faced immediate imprisonment and (2) had to argue against imprisonment against the prosecutor, who was trained as an attorney. ***Id.*** at 235. Thus, the Court held the defendant had a due process right to appointed counsel. ***Id.***

E. *Due Process Right to Counsel for Civil Contempt Proceeding Involving Court-Ordered Fines and Costs Payable to the Commonwealth*

Here, we have facets from ***Turner***, ***Gonzales***, and ***Stone***. Initially, the question of whether this proceeding is civil or criminal in nature is not before this Court. Both parties have agreed that the contempt proceeding is civil in nature and have not presented any argument suggesting otherwise. ***See***

- 19 -

Appellant's Brief at 12; Commonwealth's Brief at 5. Furthermore, no party disputes that Appellant's affected private interest is the freedom from imprisonment.

Appellant's ability to pay, like the defendant's ability in *Turner*, is a question that must be answered with utmost accuracy. *See Turner*, 564 U.S. at 445. Unlike in *Turner*, the party opposing the defendant is the Commonwealth, who was represented by a probation officer. *See id.* at 446-48. The Commonwealth also has several relevant statutes and rules that address Appellant's financial resources and therefore could potentially reduce or eliminate any possibility of erroneous imprisonment. *See id.*; *see generally* 42 Pa.C.S. § 9730; 42 Pa.C.S. § 9772; Pa.R.Crim.P. 706. In accordance with those procedural safeguards, a court's findings of fact regarding the contemnor's financial ability to pay would seemingly assure the fundamental fairness of any contempt proceeding without imposing any requirement for court-appointed counsel. *See Turner*, 564 U.S. at 446-48. Thus, a trial court's adherence to these preexisting safeguards would appear to obviate any automatic right to counsel.[11] *See id.*

_____

[11] As we discuss below, the instant trial court did not comply with these safeguards. But our current inquiry is limited to whether Appellant has a due process right to counsel, with one factor being the existence of additional or substitute procedural safeguards. The *Turner* multi-factor framework necessarily presumes proper employment of those safeguards. *See Turner*, 564 U.S. at 447.

But unlike **Turner**, and more akin to **Gonzales** and **Stone**, the fines and costs are owed to the Commonwealth and not a private party. **See Turner**, 564 U.S. at 448; **Gonzales**, 945 S.W.2d at 832; **Stone**, 268 P.3d at 228.[12] Thus, the **Turner** Court's reluctance to impose an automatic right to court-appointed counsel for an indigent defendant must be viewed against the backdrop of that case's unique facts. **See Turner**, 564 U.S. at 449 (noting that when a payment is owed to the state, a civil contempt proceeding for failure to pay is akin to a debt-collection hearing).

Here, like the defendant in **Stone**, Appellant appeared at a contempt proceeding in which the court could have imprisoned him for contempt immediately.[13] **See Stone**, 268 P.3d at 235. As both the **Stone** and **Gonzales** Courts observed, several courts have held that an indigent defendant faced with incarceration at a contempt proceeding is entitled to counsel. **See Gonzales**, 945 S.W.2d at 836 (citing cases); **Stone**, 268 P.3d at 234.

Furthermore, Appellant had to represent himself in a proceeding in which the Commonwealth was represented by a probation officer. Although a

---

[12] "We may consider the decisions of other states' courts, but they are not binding on us." **Commonwealth v. Luketic**, 162 A.3d 1149, 1157 n.9 (Pa. Super. 2017).

[13] As noted above, Appellant had failed to make bail, and thus was already in prison.

probation officer is not an attorney, the Commonwealth was nonetheless advocating that Appellant be held in contempt, which raised a likelihood of imprisonment. *Cf. Stone*, 268 P.3d at 235.

After weighing the nature and magnitude of these interests, we decline to impose an automatic right to court-appointed counsel for all civil contempt proceedings involving an indigent defendant's failure to pay court-imposed fines and costs. Sufficient procedural safeguards exist, such as 42 Pa.C.S. § 9730, 42 Pa.C.S. § 9772, and Pa.R.Crim.P. 706, that would prevent any erroneous imprisonment—assuming the trial court complied with them. While we are cognizant of the asymmetry present between an indigent defendant acting *pro se* and the Commonwealth and its resources, absent any court finding of a likelihood of imprisonment, mandating a right to court-appointed counsel seems premature.

Rather, as the Commonwealth has acknowledged, *see* Commonwealth's Brief at 9, an indigent defendant's right to court-appointed counsel is triggered in any proceeding in which the court finds there is a likelihood of imprisonment.[14] Thus, we hold that upon the trial court's determination at

_____

[14] We note the parallel to Pa.R.Crim.P. 122(A)(1), which provides that "[c]ounsel shall be appointed . . . in all summary cases, for all defendants who are without financial resources or who are otherwise unable to employ counsel when there is a likelihood that imprisonment will be imposed[.]" Pa.R.Crim.P. 122(A)(1). The comment to the Rule explains that "in summary cases, [this rule] requires a pretrial determination by the issuing authority as to whether

the civil contempt hearing that there is a likelihood of imprisonment for contempt and that the defendant is indigent, the court must appoint counsel and permit counsel to confer with and advocate on behalf of the defendant at a subsequent hearing. An indigent defendant has the option of knowingly, intelligently, and voluntarily waiving that right to appointed counsel. ***See generally*** Pa.R.Crim.P. 121 (identifying information a court should elicit from the defendant to ensure a proper waiver of the right to counsel). Here, because Appellant was imprisoned, he should have been afforded the opportunity to demonstrate entitlement to court-appointed counsel.

F. *Waiver of Right to Counsel*

Having concluded that at a civil contempt proceeding for failure to pay court-ordered fines and costs, an indigent defendant has a right to appointed counsel upon a determination of a likelihood of imprisonment, we briefly address the Commonwealth's allegation of waiver. The Commonwealth notes that Appellant was advised of his right to counsel. Commonwealth's Brief at 10.[15] It posits that because Appellant never requested a public defender and

a jail sentence would be likely in the event of a finding of guilt in order to determine whether trial counsel should be appointed to represent indigent defendants." Pa.R.Crim.P. 122 cmt. "If there is any doubt, the issuing authority can seek the advice of the attorney for the Commonwealth, if one is prosecuting the case, as to whether the Commonwealth intends to recommend a jail sentence in case of conviction." ***Id.***

[15] The Commonwealth's brief does not acknowledge that Appellant was notified of his right to counsel at the April 6, 2017 bench warrant hearing and

- 23 -

did not retain private counsel, he knowingly, intelligently, and voluntarily waived his right to counsel. ***Id.*** We disagree. The record simply does not reflect Appellant knowingly, intelligently, and voluntarily waived his right to counsel. ***See Rodriguez v. Rodriguez***, 600 A.2d 589, 551-52 (Pa. Super. 1991) (holding putative parent challenging paternity had constitutional right to counsel and never knowingly and intelligently waived right to counsel); ***see generally*** Pa.R.Crim.P. 121.

## III. Inquiring into the Potential Contemnor's Financial Ability to Pay

Having resolved that an indigent defendant may have a right to court-appointed counsel, we next address whether the trial court erred by holding Appellant in contempt. Ordinarily, having reversed on Appellant's first issue, we need not address Appellant's remaining issues. ***See Commonwealth v. Sodomsky***, 137 A.3d 620, 629 (Pa. Super.), ***appeal denied***, 158 A.3d 1236 (Pa. 2016), ***cert. denied***, 137 S. Ct. 1205 (2017). We deem it appropriate, however, to address Appellant's issue to forestall any potential issues on remand.

Appellant argues that the trial court abused its discretion in holding him in contempt by failing to consider his ability to pay before opining that his failure to pay was "willful." Appellant's Brief at 13. In Appellant's view, the

_____

not at the April 24, 2017 contempt hearing, which resulted in his imprisonment.

- 24 -

court, although asking whether anyone came to pay the outstanding fines on his behalf, failed to adequately inquire into his financial status. *Id.* at 16. Appellant maintains that he attempted to explain he lacked income, sold his blood for money, and potentially had a job in the near future. *Id.*

The Commonwealth argues that the trial court did not err by holding Appellant in contempt. Commonwealth's Brief at 5. Pennsylvania Rule of Criminal Procedure 706 and pertinent caselaw, the Commonwealth asserts, do not provide "guidance on how to determine whether a defendant is willfully refusing to pay their fines and costs." *Id.* at 7-8. According to the Commonwealth, the trial court concluded Appellant "must have had **some** ability to pay his fines and costs," as he noted he could sell his blood, had a potential job, and knew someone in Reading, Pennsylvania, that could pay for bail.[16] *Id.* at 8. Based on these facts, the Commonwealth opines the trial court did not abuse its discretion because Appellant established "some ability to pay his fines and costs and willfully refused to do so." *Id.* We conclude Appellant has established that the trial court erred.

The standard of review for an order finding a party in contempt is an abuse of discretion. *Commonwealth v. Bowden*, 838 A.2d 740, 761 (Pa. 2003). "Discretion is abused when the course pursued represents not merely

---

[16] As set forth above, Appellant did not state at the contempt hearing that he knew someone in Reading that could pay for bail—that testimony occurred at the prior bench warrant hearing. N.T. Bench Warrant Hr'g, 4/6/17, at 4.

an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied[.]" *Id.* at 762 (citations omitted).

By way of background, Section 9728 of the Sentencing Code discusses the collection of fines and costs:

> (1) Except as provided in subsection (b)(5),[17] all restitution, reparation, fees, costs, fines and penalties shall be collected by the county probation department or other agent designated by the county commissioners of the county with the approval of the president judge of the county for that purpose in any manner provided by law. However, such restitution, reparation, fees, costs, fines and penalties are part of a criminal action or proceeding and shall not be deemed debts.

42 Pa.C.S. § 9728(a)(1).

Section 9730, in turn, sets forth the procedures for a failure to pay:

> **(b) Procedures regarding default.—**
>
> (1) If a defendant defaults in the payment of a fine, court costs or restitution after imposition of sentence, the issuing authority or a senior judge or senior magisterial district judge appointed by the president judge for the purposes of this section may conduct a hearing to determine whether the defendant is financially able to pay.
>
> (2) If the issuing authority, senior judge or senior magisterial district judge determines that the defendant is financially able to pay the fine or costs, the issuing authority, senior judge or senior magisterial district judge may turn the delinquent account over to a private collection agency or impose imprisonment for nonpayment, as provided by law.

---

[17] This subsection addresses deductions from an offender's personal financial account with the Department of Corrections and is not pertinent here. *See generally* 42 Pa.C.S. § 9728(b)(5).

(3) If the issuing authority, senior judge or senior magisterial district judge determines that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the issuing authority, senior judge or senior magisterial district judge may provide for payment in installments. . . .

(4) A decision of the issuing authority, senior judge or senior magisterial district judge under paragraph (2) or (3) is subject to section 5105 (relating to right to appellate review).

42 Pa.C.S. § 9730(b)(1)-(3).[18]

The Pennsylvania Commonwealth Court has explained the procedure for

imprisoning a defaulting offender as follows:

> **Before an offender can be confined solely for nonpayment of financial obligations he or she must be given an opportunity to establish inability to pay.** If the offender establishes indigence, he or she will be allowed to make payments in reasonable installments. Thus, if an offender defaults in the payment of a fine or court costs after imposition of sentence, the fines and costs court may conduct a hearing to ascertain information regarding an offender's financial resources. 42 Pa.C.S. § 9730(b)(1). If the fines and costs court determines the offender is able to pay fines or costs, it may turn the delinquent account over to a private collection agency or impose imprisonment for nonpayment, as provided by law. 42 Pa.C.S. § 9730(b)(2).
>
> Imprisonment for nonpayment of financial obligations may [also] be imposed on a finding of contempt for failure to pay a fine, 42

---

[18] The Pennsylvania Supreme Court has apparently construed the statute as requiring a hearing on the defendant's ability to pay. *See Buck v. Beard*, 879 A.2d 157, 161 (Pa. 2005) (noting that "pursuant to Section 9730(b) of the Sentencing Code, when a defendant is in default, the court of common pleas conducts a hearing to determine the defendant's ability to pay, and then may order an appropriate payment plan. Section 9730(b) directs the court to consider the defendant's financial resources").

Pa.C.S. § 9772,[19] on a finding of contempt for failure to make restitution, 18 Pa.C.S. § 1106,[20] or on a finding of violation of a specific condition of supervision. 42 Pa.C.S. § 9773. Each proceeding requires a hearing.

*George v. Beard*, 824 A.2d 393, 396 (Pa. Cmwlth. 2003) (emphasis added and some citations omitted).

If . . . failure to pay sentenced financial obligations exposes an offender to initial confinement, additional confinement or increased conditions of supervision, a hearing is warranted. Stated differently, if an offender is notified that he or she is charged with contempt or with probation or parole violations as a result of failure to pay fines, costs or restitution, the offender should be afforded a hearing.

*Id.*

Pennsylvania Rule of Criminal Procedure 706 similarly bars imprisonment unless the court conducts a hearing and ascertains that the defendant has the financial ability to pay:

---

[19] In relevant part, Section 9772 states as follows:

Unless there is proof that failure to pay a fine or that portion of the fine that is due is excusable, the court may after a hearing find the defendant guilty of contempt and sentence him to not more than six months imprisonment, if a term of confinement of that amount could have been imposed for the offense charged.

42 Pa.C.S. § 9772.

[20] Section 1106(f), in pertinent part, states "[u]pon such notice of failure to make restitution, or upon receipt of the contempt decision from a magisterial district judge, the court shall order a hearing to determine if the offender is in contempt of court or has violated his probation or parole." 18 Pa.C.S. § 1106(f).

(A) A court shall not commit the defendant to prison for failure to pay a fine or costs unless it appears after hearing that the defendant is financially able to pay the fine or costs.

(B) When the court determines, after hearing, that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the court may provide for payment of the fines or costs in such installments and over such period of time as it deems to be just and practicable, taking into account the financial resources of the defendant and the nature of the burden its payments will impose . . . .

(C) The court, in determining the amount and method of payment of a fine or costs shall, insofar as is just and practicable, consider the burden upon the defendant by reason of the defendant's financial means, including the defendant's ability to make restitution or reparations.

Pa.R.Crim.P. 706(A)-(C).[21]

Initially, we acknowledge that the trial court did not specify the particular framework it was proceeding under, *e.g.*, 42 Pa.C.S. § 9730, 42 Pa.C.S. § 9772, or Pa.R.Crim.P. 706. The court's lack of specificity, however, does not inhibit our review because prior to imprisoning a contemnor for failure to pay fines or costs, the trial court must render findings of fact on the contemnor's financial resources. **See** 42 Pa.C.S. § 9730 (stating imprisonment for nonpayment must be pursuant to law); 42 Pa.C.S. § 9772 (explaining imprisonment for nonpayment must occur after a hearing and a determination that the defendant's failure to pay was not excusable);

---

[21] This rule of criminal procedure would seem to suggest that a finding of contempt due to a failure to pay court-ordered fines and costs would be criminal in nature.

- 29 -

Pa.R.Crim.P. 706 (specifying that a court shall not imprison without a hearing and a finding that the defendant had a financial ability to pay).

Here, the trial court failed to make any findings of fact on Appellant's ability to pay prior to imprisoning him. *See* 42 Pa.C.S. § 9730(b)(2); 42 Pa.C.S. § 9772; Pa.R.Crim.P. 706. Although Appellant indicated that he could sell his blood, the court failed to find—as our law requires—that he had the present financial ability to pay the outstanding fines and costs such that imprisonment was warranted.[22] Order, 8/22/17; *see* 42 Pa.C.S. § 9730(b)(2) (court must comply with law prior to imprisoning defendant for nonpayment); 42 Pa.C.S. § 9772 (court cannot hold a defendant in contempt and imprison defendant unless there is proof that the failure to pay fine was not excusable); Pa.R.Crim.P. 706 (stating that unless a defendant is financially able, the court "shall not" imprison a defendant for a failure to pay fines or costs). By imprisoning Appellant without the required findings of fact of his financial resources, the court failed to apply the law properly.[23] *See Bowden*, 838

_____

[22] We doubt the amount received from the sale of Appellant's blood would suffice to pay his outstanding fines and costs or the $250 purge condition.

[23] We note that the National Task Force on Fines, Fees and Bail Practices has drafted a useful summary articulating the procedure for collecting court-imposed fines and costs. Nat'l. Task Force on Fines, Fees and Bail Practices, *Lawful Collection of Legal Financial Obligations* (2017), http://www.ncsc.org/~/media/Images/Topics/Fines%20Fees/BenchCard_FIN AL_Feb2_2017.ashx. Page two of this document refers to a document titled,

A.2d at 762.  Thus, we vacate the order below and remand for a hearing on Appellant's financial means to pay the court-ordered fines and costs.  If the court determines at the civil contempt hearing that there is a likelihood of imprisonment,[24] then the court must ascertain whether Appellant is entitled to court-appointed counsel, which, as we held above, he has a conditional right to under the Due Process Clause of the United States Constitution.[25]  In light of the foregoing, we vacate the payment plan.

Order vacated.  Case remanded for further proceedings.  Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Prothonotary

Date: 06/21/2018

---

*Best Practices for Determining the Right to Counsel in Legal Financial Obligation Cases*, which has not yet been released.

[24] A finding of indigency would appear to preclude any determination that Appellant's failure to pay the court-ordered fines and costs was willful.

[25] As we noted above, the parties did not argue that the underlying contempt proceeding was not civil in nature.  The issue of whether a contempt proceeding for failure to pay court-ordered fines and costs is civil or criminal is not properly before this Court.