J-S43018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RONICA L. JAMISON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ERIC L. GIBBS | : | |
| | : | |
| Appellant | : | No. 1550 MDA 2022 |

Appeal from the Order Entered October 5, 2022
In the Court of Common Pleas of York County
Domestic Relations at No(s): 1604 SA 2018

BEFORE: McLAUGHLIN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.: **FILED: MARCH 1, 2024**

Appellant, Eric L. Gibbs, appeals from the order entered in the York County Court of Common Pleas, which found him in contempt for failing to make support payments to Appellee, Ronica L. Jamison, as well as failing to report status changes and failing to comply with job search directives. We vacate and remand.

The relevant facts and procedural history of this appeal are as follows. On January 24, 2022, the York County Domestic Relations Section ("DRS") filed contempt petitions against Appellant at two different docket numbers, 1604 SA 2018 and 763 SA 2020. In the petitions, DRS alleged that Appellant did not comply with child support orders by failing to: 1) pay as ordered; 2)

_____

[*] Retired Senior Judge assigned to the Superior Court.

provide information; and 3) comply with job search directives. The court scheduled a hearing on the matter for March 2, 2022. The scheduling order noted that Appellant had "the right to a lawyer, who may attend the conference-hearing and represent you." (Order, filed 1/24/22, at 2) (capitalization omitted).[1] Appellant subsequently failed to appear at the hearing, and the court issued a bench warrant. Appellant was apprehended on or about August 26, 2022, and the court rescheduled the contempt hearing.

On October 5, 2022, Appellant appeared *pro se* at the hearing. At the conclusion of the hearing, the court found Appellant in contempt at each docket number, and it sentenced him to three months' incarceration, effective from August 26, 2022. The court also imposed a term of eighteen months of probation with the following conditions: 1) Appellant must pay support as ordered on a regular and timely basis; 2) Appellant must report all employment status changes within seven days; and 3) Appellant must comply with all job search requirements when unemployed or not paying the full amount of support. The court set a cash purge amount of $1,000.00 and a work purge of forty days in the county prison's "Outmate" program.

On October 31, 2022, Appellant timely filed a single, *pro se* notice of appeal listing both lower court docket numbers. The notice of appeal included

_____

[1] The order also explained that the Lawyer Referral Service of the York County Bar Association could provide Appellant "with information about agencies that may offer legal services to eligible persons at a reduced fee or no fee." (Order, filed 1/24/22, at 2) (capitalization omitted).

a *pro se* "motion for post-trial relief" claiming that, among other things, the court had violated Appellant's right to counsel. The notice of appeal also contained a completed application for leave to proceed *in forma pauperis* ("IFP"). On January 17, 2023, this Court remanded the matter and directed the contempt court to rule on Appellant's open motion to proceed IFP. This Court also ordered the contempt court to determine whether Appellant was entitled to appointed counsel on appeal.

On January 24, 2023, the contempt court granted IFP status and appointed current counsel. On March 20, 2023, this Court directed counsel to file separate, amended notices of appeal at each of the underlying docket numbers. Counsel complied and timely filed the amended notices of appeal on March 31, 2023.[2]

Appellant now raises one issue for our review:

> Did the [contempt] court deny [Appellant] his right to counsel where it proceeded in the absence of counsel, did not seek or secure any waiver of counsel, and went on to find [Appellant] in contempt and order him incarcerated?

(Appellant's Brief at 4).

On appeal, Appellant maintains that the court erred in finding him "in contempt and ordering his incarceration without first appointing counsel to represent him." (***Id.*** at 10). Appellant initially suggests that the contempt

---

[2] The related appeal from the contempt order at 763 SA 2020 is docketed in this Court at 522 MDA 2023.

- 3 -

hearing was criminal in nature, and he "had a Sixth Amendment right to counsel and was entitled to the protections of Pa.R.Crim.P. 121." (*Id.*) Even if the contempt hearing was civil rather than criminal, Appellant asserts that he possessed a due process right to counsel. Appellant cites ***Commonwealth v. Diaz***, 191 A.3d 850 (Pa.Super. 2018), for the proposition that an indigent defendant's right to court-appointed counsel is triggered at any proceeding where the court finds a likelihood of imprisonment. Because his contempt hearing resulted in imprisonment, Appellant insists that the court should have appointed counsel before imposing the sentence. Moreover, Appellant contends that he did not waive his right to counsel. Appellant concludes that this Court must reverse the order finding him in contempt and remand the matter for proceedings with the assistance of counsel. We agree.[3]

"In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion." ***Rogowski v. Kirven***, 291 A.3d 50, 57 (Pa.Super. 2023) (quoting ***P.H.D. v. R.R.D.***, 56 A.3d 702, 706 (Pa.Super. 2012)). "This Court must place great reliance on the sound discretion of the trial [court] when reviewing an order of contempt." ***Id.***

> The determination of whether a particular order contemplates civil or criminal contempt is crucial, as each

---

[3] Further, DRS "would concur in the relief sought by Appellant, in so far as the order of the finding of contempt and sentence be vacated." (DRS's Brief at 10). DRS also "concedes that the record of the contempt court below is void of any waiver of right to counsel." (*Id.*)

classification confers different and distinct procedural rights on the defendant. There is nothing inherent to a contemptuous act or refusal to act which classifies the act itself as "criminal" or "civil." The distinction between criminal and civil contempt is rather a distinction between two permissible judicial responses to contumacious behavior. These judicial responses are classified according to the dominant purpose of the court. If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with the decree of the court are civil in nature. The purpose of a civil contempt proceeding is remedial. Judicial sanctions are employed to coerce the defendant into compliance with the court's order, and in some instances, to compensate the complainant for losses sustained.

> The factors generally said to point to a civil contempt are these: (1) Where the complainant is a private person as opposed to the government or a governmental agency; (2) where the proceeding is entitled in the original … action and filed as a continuation thereof as opposed to a separate and independent action; (3) where holding the defendant in contempt affords relief to a private party; (4) where the relief requested is primarily for the benefit of the complainant; and (5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion.

*Lachat v. Hinchcliffe*, 769 A.2d 481, 487-88 (Pa.Super. 2001) (internal citations omitted). A contempt order used to coerce a parent into paying a support obligation and arrearages is properly characterized as civil. *See Barrett v. Barrett*, 470 Pa. 253, 260, 368 A.2d 616, 619 (1977).

This Court has declined to impose an automatic right to court-appointed

counsel for all civil contempt proceedings involving an indigent defendant's failure to pay court-imposed fines and costs. *See Diaz, supra* at 862.[4] Rather, "an indigent defendant's right to court-appointed counsel is triggered in any proceeding in which the court finds there is a likelihood of imprisonment." *Id.* at 862 (footnote omitted).

> [U]pon the trial court's determination at the civil contempt hearing that there is a likelihood of imprisonment for contempt and that the defendant is indigent, the court must appoint counsel and permit counsel to confer with and advocate on behalf of the defendant at a subsequent hearing. An indigent defendant has the option of knowingly, intelligently, and voluntarily waiving that right to appointed counsel.

*Id.* at 862-63.

Instantly, the court found Appellant in contempt due to his failure to comply with child support orders. Thus, the contempt proceedings were civil in nature. *See Barrett, supra*; *Lachat, supra*. The court also determined that a prison sentence was warranted. Because Appellant was an indigent defendant who faced imprisonment for civil contempt without waiving his right to counsel, the court abused its discretion by failing to appoint counsel to advocate on Appellant's behalf. *See Rogowski, supra*; *Diaz, supra*. Accordingly, we vacate the contempt order and sentence, and we remand for

---

[4] Although *Diaz* began as a criminal matter with the entry of a guilty plea for retail theft charges, the parties agreed that the appellant subsequently proceeded to a civil contempt hearing due to his failure to pay certain fines and costs. *See Diaz, supra* at 861.

a new contempt hearing where Appellant may be represented by counsel.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: 03/01/2024