J-S41018-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KELLI NONEMACHER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SEAN NONEMACHER | : | |
| | : | |
| Appellant | : | No. 861 EDA 2024 |

Appeal from the Order Entered February 20, 2024
In the Court of Common Pleas of Montgomery County Domestic Relations
at No(s): 2022-DR-01065,
PACSES: 892301655

BEFORE: MURRAY, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.: **FILED MARCH 3, 2025**

Appellant, Sean Nonemacher ("Father"), appeals *pro se* from the order entered in the Montgomery County Court of Common Pleas, which found him in contempt for failing to make support payments to Appellee, Kelli Nonemacher ("Mother"). We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case. (*See* Trial Court Opinion, filed 7/8/24, at 1-11). Therefore, we have no reason to restate them.

Father raises the following issues for our review:

> Did the trial court err and abuse its discretion by finding [Father] to be in contempt of court?
>
> Did the trial court err and abuse its discretion by imprisoning [Father] without rendering findings of fact into the financial ability to pay the fines/purge amount and costs related?

Did the trial court err and exercise bias and ill will in denying [Father] access to resources to convey/pay the purge amount?

Did the trial court abuse its discretion and misapply the law in the calculation and award of counsel fees?

Did the trial court err and abuse its discretion in failing to inform and appoint legal counsel for [Father]?

(Father's Brief at 4).

"In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion." *Rogowski v. Kirven*, 291 A.3d 50, 57 (Pa.Super. 2023) (quoting *P.H.D. v. R.R.D.*, 56 A.3d 702, 706 (Pa.Super. 2012)). "This Court must place great reliance on the sound discretion of the trial [court] when reviewing an order of contempt." *Id.*

A person who willfully fails to comply with a support order may be adjudicated in contempt, which may be punishable by imprisonment for a period not to exceed six months. 23 Pa.C.S.A. § 4345(a). If the court commits a defendant to jail for contempt, the court shall specify in its order "the condition the fulfillment of which will result in the release of the [defendant]." 23 Pa.C.S.A. § 4345(b). Additionally, "[i]f the court determines that the person subject to a child support order did not have good cause for failing to make child support payments on time, it may further assess costs and reasonable attorney fees incurred by the party seeking to enforce the order." 23 Pa.C.S.A. § 4351.

A contempt order used to coerce a parent into paying a support

obligation and arrearages is properly characterized as civil. *See Barrett v. Barrett*, 470 Pa. 253, 260, 368 A.2d 616, 619 (1977). This Court has declined to impose an automatic right to court-appointed counsel for all civil contempt proceedings involving an indigent defendant's failure to pay court-imposed fines and costs. *Commonwealth v. Diaz*, 191 A.3d 850, 862 (Pa.Super. 2018).[1] Rather, "an indigent defendant's right to court-appointed counsel is triggered in any proceeding in which the court finds there is a likelihood of imprisonment." *Id.* at 862 (footnote omitted).

> [U]pon the trial court's determination at the civil contempt hearing that there is a likelihood of imprisonment for contempt and that the defendant is indigent, the court must appoint counsel and permit counsel to confer with and advocate on behalf of the defendant at a subsequent hearing. An indigent defendant has the option of knowingly, intelligently, and voluntarily waiving that right to appointed counsel.

*Id.* at 862-63.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable, Daniel J. Clifford, we conclude Father's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented.

In his first and second issues combined, Father argues that the court

---

[1] Although *Diaz* began as a criminal matter with the entry of a guilty plea for retail theft charges, the parties agreed that the appellant subsequently proceeded to a civil contempt hearing due to his failure to pay certain fines and costs. *See Diaz, supra* at 861.

- 3 -

erred in finding him in contempt because the court failed to consider the evidence Father put forth demonstrating that he did not have the present ability to pay the amount ordered by the court. The court explained that prior to the court's order of incarceration, Father had participated in seven enforcement proceedings and been found in contempt on three occasions. (*See* Trial Court Opinion at 17-19). At each hearing, the court reviewed the pay stubs Father submitted and determined that Father had the ability to pay but chose to prioritize the payment of other expenses in his life over the payment of child support.[2] (*Id.*) Accordingly, the court did not err in finding Father in contempt of court and imposing imprisonment for willful non-compliance with the support order. *See Rogowski, supra.*

In his third issue, Father claims that the court exhibited prejudice and bias against Father when it failed to promptly provide Father with an order setting forth the purge amount and denied Father the use of a phone at the

_____

[2] Father cites to **Commonwealth v. Smetana**, 191 A.3d 867, 873 (Pa.Super. 2018) to support his claim that the court erred in finding him in contempt. In **Smetana**, this Court concluded that the trial court erred by failing to make a determination that the appellant, in his own capacity, had the ability to pay the outstanding fines prior to imprisoning the appellant for contempt of court. Notably, the trial court in **Smetana** had relied on the appellant's acknowledgement that he could have potentially borrowed money from a sibling to pay the fine. Here, the court reviewed Father's pay stubs and expenses and determined that Father had the financial ability to pay the court ordered support amount. The court merely noted as additional support of its decision that Father's mortgage and various lifestyle expenses were being paid by Father's father and girlfriend. Therefore, **Smetana** is distinguishable and does not entitle Father to relief.

Montgomery County Correctional Facility. The court found that there was no merit to Father's claim because Father was provided with a copy of the contempt order at the conclusion of the February 20, 2024 hearing, which clearly set forth the amount Father was required to pay to purge his contempt. (*See* Trial Court Opinion at 19-20). Additionally, the court noted that all defendants are provided access to a telephone at the detention center in the courthouse and the Montgomery County Correctional Facility.[3] (*See id.*)

In his fourth issue, Father asserts that the court erred in ordering him to pay Mother's counsel fees because "the extensive contempt proceedings and litigation was at no fault of [Father]." (Father's Brief at 10). The court determined that Father willfully reduced his work hours in an attempt to reduce his future support obligations and justify his failure to pay his past support obligations. (*See* Trial Court Opinion at 21-23). The court concluded that Father's conduct, which resulted in many enforcement and contempt proceedings, was obdurate and vexatious and warranted the award of attorney fees to Mother. (*See id.*) Additionally, we note that the court found Father in contempt of court three times for failing to pay his support

_____

[3] Father's brief fails to meaningfully develop his argument that the court exhibited prejudice or bias towards Father and fails to support this claim with relevant authority. *See In re Estate of Whitley*, 50 A.3d 203, 209 (Pa.Super. 2012), *appeal denied*, 620 Pa. 724, 69 A.3d 603 (2013) (reiterating that "[t]his Court will not consider the merits of an argument which fails to cite relevant case or statutory authority"). As such, Father has waived this claim.

obligations as ordered without just cause. As such, the court had discretion to order Father to pay reasonable attorney fees incurred by Mother in seeking to enforce the order, and we cannot say the court abused its discretion in this case. *See* 23 Pa.C.S.A. § 4351.

In his fifth issue, Father argues that the court erred in failing to appoint counsel to represent Father in a proceeding where there was a likelihood that Father could be imprisoned. The court explained that Father was provided with a notice of his right to counsel, but Father signed a waiver and elected to proceed *pro se*. (*See* Trial Court Opinion at 23-25). Further, the court informed Father that the proceedings could result in incarceration, but Father did not rescind his waiver or request for counsel to be appointed. *See Diaz, supra*.

Based on the reasoning set forth above and described in greater detail in the court's opinion, we affirm on the basis of the trial court's opinion.[4]

Order affirmed.

_____

[4] The trial court has suggested that this Court remand this matter to award Mother counsel fees incurred during this appeal. We decline the trial court's invitation to do so because (1) Mother has not requested this relief; and (2) after the contempt hearing where Father was imprisoned, Mother elected to proceed *pro se*. As Mother is *pro se* on appeal, there is no basis to award her counsel fees incurred with this appeal.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/3/2025

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

| | | |
|---|---|---|
| **KELLI NONEMACHER** | : | **NO. 2022-DR-01065** |
| **PLAINTIFF** | : | |
| | : | **PACSES NO. 892301655** |
| **v.** | : | |
| | : | **861 EDA 2024** |
| **SEAN NONEMACHER** | : | |
| **DEFENDANT** | : | |

## OPINION

Clifford, Daniel J.                                                                July 8, 2024

Appellant, Sean Nonemacher, files this appeal from the Order entered by the undersigned

on February 20, 2024 in this child support enforcement matter.

### FACTUAL AND PROCEDURAL HISTORY

Appellant is Sean Nonemacher (hereinafter "Father"). Appellee is Kelli Nonemacher

("Mother).

The parties hereto were married on June 9, 2012 and have two minor children.

On August 10, 2021, Mother filed a Complaint for Divorce with the Prothonotary

requesting equitable distribution, child support, spousal support and/or alimony pendent lite,

payment of counsel fees and primary custody of the parties' children. [1] A separate Complaint for

Alimony Pendente Lite (APL), and a Complaint for Child Support, was filed about a year later

on August 11, 2022 with the Domestic Relations Office. [2]

---

[1] *See* August 10, 2021 Complaint in Divorce – Docket No. 2021-16792.

[2] *See* August 11, 2022 Complaint for Support.

On September 21, 2022, a Conference was conducted before a DRO Conference Officer on Mother's request for child support and APL. An Interim Order was entered on that same date directing Father to pay a total of $3,079.97 a month allocated as follows:

| | |
|---|---|
| $1,341.50 | Basic child support |
| $538.56 | Child care |
| $220.12 | Medical Insurance paid by Mother |
| $728.28 | APL |
| $251.51 | Mortgage deviation paid by Mother |
| | |
| $3,079.97 | Total |

The Order also provided for the payment of arrears at $615 per month, for a total of $3,694.97 a month, "*with all arguments reserved for the record hearing.*" [3]

On February 27, 2023, a record hearing was conducted before the Support Hearing Officer. [4] Both parties were represented by legal counsel at the Hearing. The Officer issued a

---

[3] *See* September 21, 2022 Order of Court – Support Order (Unallocated/Alternative).

[4] The child support proceedings were subject to Pennsylvania Rule of Civil Procedure 1910.12. *Office Conference. Hearing. Record. Exceptions. Order.*, as observed by the Montgomery County Court of Common Pleas, which provides the following:

> *"(d) The hearing officer shall receive evidence, hear argument, and not later than 20 days after the close of the record, file with the court a report containing a recommendation with respect to the entry of an order of support...*
>
> *(e) The court, without hearing the parties, shall enter an interim order consistent with the proposed order of the hearing officer. Each party shall be provided, either in person at the time of the hearing or by mail, with a copy of the interim order and written notice that any party may, within twenty days after the date of receipt or the date of mailing of the order, whichever occurs first, file with the domestic relations section written exceptions to the report of the hearing officer and interim order.*
>
> ·        ·        ·
>
> *(h) If exceptions are filed, the interim order shall continue in effect. The court shall hear argument on the exceptions and enter an appropriate final order substantially in the form set forth in Rule 1910.27(e) within sixty days from the date of the filing of exceptions to the interim order..."*

Recommendation on March 2, 2023 directing Father to pay Mother the amount of $2,817 per month as follows:

| | |
|---|---|
| $1,283 | Base child support |
| $576 | APL |
| $234 | Medical insurance paid by Mother |
| $453 | Child care |
| $271 | Mortgage deviation paid by Mother |
| | |
| $2,817 | Total |

The aforementioned Order also provided for the payment of $300 a month on arrears for a total of $3,117. [5]

The amount of support was based upon the Officer's specific income determinations for both parties as set forth in the *"Findings of Fact"* section of the recommended Order. [6]

Mother had been employed as an administrative assistant at Souderton Area School District for the past six years and had a 2022 gross income of $30,743 or $2,289 net monthly.

Father had worked at United Drilling for the past 18 years. His gross income was $93,511 in 2020, $92,220 in 2021 and $92,486 in 2022. [7] The Officer's Report contained extensive additional findings as to Father's income as follows:

> *"Until last year, paternal grandfather was president and a large shareholder of United Drilling.*
>
> *Per Mother and confirmed by Father, Father had no bank account for part of the marriage.*

[5] *See* March 2, 2023 Recommendation (Generic).

[6] *Id.*

[7] *Id.; see* September 26, 2023 Notes of Testimony, pg. 10; *see also* December 20, 2023 Notes of Testimony, pg. 14 and February 20, 2024 Notes of Testimony pg. 13.

> *Father has a child support obligation from Tennessee* [for another child from a prior relationship] *and his bank account was frozen to collect past due support. Therefore, he closed his bank account and received cash in lieu of a paycheck from his employer.*
>
> *Father also periodically took his pay in cash to avoid child support garnishment.*
>
> *Mother believes Father is able to manipulate his income as result of paternal grandfather's close ties with United Drilling.*
>
> *Father's past desire to avoid his child support obligation for his other child lend credibility to Mother's argument.*
>
> *Father has bought a home and a new vehicle.*
>
> *Father has vacationed in Hawaii and Lake Tahoe courtesy of his girlfriend.*
>
> *Father has new tattoos also courtesy of his girlfriend.* "[8]

The Officer found Father's net monthly income to be $5,706.[9]

Thereafter, Father filed timely Exceptions to the Officer's Recommendation.

The Exceptions were argued before the Honorable Wendy Demchick-Alloy on May 25, 2023 with an Order entered on that same date. The Order granted Father's first exception, with regard to a minor correction to the Officer's medical insurance calculation, which was remanded to the Officer. In all other aspects, the Recommended Order by the Officer was affirmed.[10]

A Supplemental Order was then entered by the Officer on June 9, 2023 adjusting the medical insurance provided by Mother to the amount of $207 per month (instead of $234 from the first Order).[11] This changed Father's support obligation to $2,790 per month, plus $305 on account of arrearages, for a total of $3,095 a month.[12]

---

[8] *See* March 2, 2023 Recommendation (Generic).

[9] *Id.*

[10] *See* May 25, 2023 Bench Order — Establishment.

[11] *See* June 9, 2023 Recommendation (Generic).

[12] *See* June 9, 2023 Supplemental Order Pursuant to Remand.

The terms of the aforementioned Supplemental Order provided for the filing of Exceptions within 20 days on page 3. There were no Exceptions filed.

There was no appeal of the Officer's Supplemental Order or Judge Demchick-Alloy's May 25, 2023 Order.

Simultaneous to all of the proceedings for the establishment of the support Order, as outlined above, enforcement proceedings also commenced due to Father's failure to comply with the payment of support (pursuant to the Order's then in place).

On January 5, 2023, a proceeding before a DRO Hearing Officer was conducted. An Order was entered directing Father to pay $3,699.97 by January 24, 2023 or directing Father to appear at another DRO enforcement proceeding on January 25th. The Order contained the following language in bold letters: "FAILURE TO PAY OR APPEAR MAY RESULT IN BEING SCHEDULED FOR A CONTEMPT COURT HEARING." [13]

On March 8, 2023, another proceeding before a DRO Hearing Officer was conducted. An Order was entered holding a finding of contempt "*in abeyance*" pending Father's payment of $3,122 on March 24, 2023. The Order further provided that, if Father did not comply, he was directed to appear in Courtroom 13 on March 28, 2023. The Order contained the following language in bold letters: "FAILURE TO PAY OR APPEAR MAY RESULT IN A BENCH WARRANT." [14]

On March 28, 2023, Father appeared before the Honorable Kelly C. Wall, with his legal counsel. To avoid a finding of contempt of Court, Father agreed to pay $961.58 by April 4,

---

[13] *See* January 5, 2023 Order.

[14] *See* March 8, 2023 Order.

2023. The Order further provided that, if Father did not comply, he was directed to re-appear before Judge Wall on April 4, 2023. [15]

On July 20, 2023, another proceeding before a DRO Hearing Officer was conducted. An Order was entered holding a finding of contempt "*in abeyance*" pending Father's payment of $4,200 by August 22, 2023. [16] The Order further provided that, if Father did not comply, he was directed to appear at another DRO enforcement proceeding on August 23, 2023. The Order contained the following language in bold letters: "FAILURE TO PAY OR APPEAR MAY RESULT IN BEING SCHEDULED FOR A CONTEMPT COURT HEARING." [17]

On August 23, 2023, another proceeding before a DRO Hearing Officer was conducted. An Order was entered holding a finding of contempt "*in abeyance*" pending Father's payment of $6,300 by September 19, 2023 or directing Father to appear for another DRO enforcement proceeding on September 20, 2023. [18] The Order contained the following language in bold letters: "FAILURE TO PAY OR APPEAR MAY RESULT IN BEING SCHEDULED FOR A CONTEMPT COURT HEARING." [19]

On September 20, 2023, another proceeding before a DRO Hearing Officer was conducted. An Order was entered holding a finding of contempt "*in abeyance*" pending Father's payment of $6,190 by September 22, 2023 or directing Father to appear before the undersigned

---

[15] *See* March 28, 2023 Order of Civil Contempt.

[16] *See* July 20, 2023 Order of Court – Contempt (Agreement).

[17] *Id.*

[18] *See* August 23, 2023 Order of Court – Contempt (Agreement).

[19] *Id.*

in Courtroom 10 on September 26, 2023. [20] The Order contained the following language in bold letters: "FAILURE TO PAY OR APPEAR MAY RESULT IN A BENCH WARRANT." [21]

On September 26, 2023, Father appeared before the undersigned on the monthly DRO Enforcement list. By the time of that proceeding, there had been a total of seven (7) enforcement proceedings before DRO Hearing Officers in 2023; plus the contempt Hearing before Judge Wall.

At the outset of the Hearing, the undersigned addressed the status of Father's legal counsel, Alan D. Williams, Esquire, as his appearance was still listed on the support docket. The Court entered a Rule of Show Cause directing Attorney Williams to explain his absence. [22] Out of an abundance of caution, Father was also provided with the *"Notice of Right to Counsel and Hearing"* Form. On the Form, Defendant specifically checked the following option:

*"I choose to proceed in this matter without representation."*

Father initialed the Form in several places and signed the Form at the bottom. In addition, the undersigned confirmed, on the record, that the Form had been provided and signed. [23]

Following testimony, the undersigned issued an Order finding Father in contempt of Court and directing him to pay $4,500 by October 13, 2023 or to re-appear in Court on October

---

[20] *See* September 20, 2023 Order of Court – Contempt (Agreement).

[21] *Id.*

[22] In his Answer to the Rule, Attorney Williams indicated that he was not present *"due to prior instructions from Defendant that he would handle support contempts on his own"* and that he had not attended many of the last several contempt proceedings with Father; *See* Answer to Rule.

[23] *See* Notice of Right to Counsel; *see also* September 26, 2023 Notes of Testimony pg. 12-13.

17, 2023. [24] The Order clarified that the undersigned provided Father with credit for all of the support payments he had made since the entry of the May 25, 2023 "Final Order" although, technically, at that juncture, the full arrearages in the amount of $14,076.93 were eligible for collection. [25]

On October 11, 2023, just two days prior to the October 13th payment deadline in the September 26th Order, Father filed a Petition to Modify with DRO. [26] Notably, this Petition was filed by Father barely four months after the "Final Order" for support was entered on May 25th by Judge Demchick-Alloy (which Father did not appeal). Father's Petition to Modify sent the parties back, yet again, on the "merry-go-round" of support litigation.

On October 16, 2023, on the day prior to the relist Court date before the undersigned set forth in the September 26th Order, Father appealed the September 26, 2023 Order to the Superior Court of Pennsylvania. [27] At that point, although not required to postpone enforcement proceedings on an interlocutory Order, the undersigned proceeded to enter an Order on November 14, 2023 to continue the proceedings pending determination of the appeal. [28]

On November 17, 2023, the Superior Court entered an Order deeming the September 26, 2023 Order as "interlocutory" and proceeded to "quash" Father's appeal. [29]

---

[24] *See* September 26, 2023 Order of Court – Contempt (Non Agree).

[25] *Id.*

[26] *See* October 11, 2023 Petition – Modification/Termination/Reinstatement of an Existing Support Order.

[27] *See* October 16, 2023 Notice of Appeal.

[28] *See* November 14, 2023 Bench Order – Enforcement.

[29] *See* November 17, 2023 Superior Court Documents.

Father then reappeared before the undersigned on the monthly DRO Enforcement list on December 20, 2023. Following testimony, the undersigned found Father to be in contempt of Court, yet a second time, and he was directed to pay $5,600 before January 5, 2024 or to re-appear back in Court on January 9, 2024. [30] Father was also directed to pay $1,580 in counsel fees directly to Mother's Counsel and $108 directly to Mother (for her lost wages in attending the enforcement proceedings). [31] Once again, the undersigned provided Father with credit for the support payments he had made since the May 25th "Final Order" although, technically, at that juncture, the full arrearages in the amount of $17,085.72 were eligible for collection.

The January 9, 2024 proceeding was continued at the request of Mother's Counsel and rescheduled to the DRO Enforcement List on February 20, 2024.

On February 20, 2024, following testimony, the undersigned found Father in contempt of Court, yet a third time, and he was directed to pay $2,500 forthwith. [32] Unlike the prior two contempt Orders, this Order provided for Father to be remanded to Montgomery County Correctional Facility "for a period of six months or until payment thereof." Father was also directed to pay, within 30 days, $2,780 in counsel fees directly to Mother's Counsel and $162 to Mother directly (again for lost wages in attending the enforcement proceedings).[33] In this Order, as with the prior two, the undersigned gave Father credit for the support payments he had paid

---

[30] *See* December 20, 2023 Order of Court – Contempt (Non Agree).

[31] *Id.*

[32] *See* February 20, 2024 Order of Court – Contempt (Non Agree).

[33] The amount of counsel fees, and lost wages to Mother, represented the cumulative amounts owed through the three contempt hearings.

since the entry of the May 25th "Final Order" although, technically, at that juncture, the full arrearages in the amount of $18,603.30 were eligible for collection. [34]

As may be obvious to the reader via the extensive history as set forth above, but merits emphasis in this Opinion at this point nevertheless, is the very detailed, multi-step, process that the Montgomery County Family Court observes in the approach to child support enforcement. Although there are seven Judges assigned to the Family Court Division, the process is managed by the same two Judges each month (Judge Wall and the undersigned) to ensure both consistency of practice and, further, that Defendants reappear before the same Judge in subsequent proceedings (to guarantee that the Judge is familiar with the history of the case). [35] The process is also designed to ensure that *every* effort has been made to address a parent's payment of child support *prior to* resorting to the ultimate sanction of incarceration. In every support case, as demonstrated in this case, there are numerous enforcement proceedings before DRO Hearing Officers before the matter is even listed before a Judge for a contempt hearing. Once listed before a Judge, there are often multiple contempt proceedings before the same Judge, over several months, to work with Defendants to ensure they can make child support payments. For unemployed parents, our Family Court has implemented two employment programs. The first one involves an out-source employment agency that will work with Defendant's to identify their educational background and employment history and arrange for actual job placements. The second program involves a local refuse company that will provide employment at an hourly wage, well above the minimum ($18.00 an hour), plus medical insurance and benefits. This information is included in this Opinion to emphasize the significant, and often painstaking,

---

[34] *See* September 26, 2023 Notes of Testimony, "D-1", pg. 24; *see also* December 20, 2023 Notes of Testimony, "Exhibit D-1", pg. 38 and February 20, 2024 Notes of Testimony "Exhibit D-1," pg. 29-37.

[35] By the time of this Opinion, a third Judge has been added to the Division's enforcement program.

-10-

efforts that are undertaken towards the Court's primary objective to ensure the payment of child support; rather than merely exercising a rush to judgement to incarcerate.

In this particular child support enforcement matter, by the time of the entry of the February 20th Order, Father had appeared for a contempt hearing before a Judge a total of four times within a one year time period. There had also been at least seven (7) enforcement proceedings before DRO Hearing Officers. Father had been held in contempt by a Judge three (3) times. [36]

As will be addressed in this Opinion, *infra*, Father was fully employed during this same one year time period *and* had an income finding of $5,706 net a month as recent as the May 2023 "Final Order" (that was not appealed). Father's mortgage payment, in the amount of $1,900, was being paid for by his father every month and his girlfriend was subsidizing the payment of "extras" in furtherance of his lifestyle. In addition, Father actually provided copies of his paystubs, which were entered into the record of to the proceedings, verifying income between $1,100.00 and $1,600.00 per week. [37]

Lastly, of particular note for a Judge to consider in child support enforcement proceedings, the record reflected that Father had previously engaged in methods to avoid the payment of child support for his child from another relationship. [38]

On February 21, 2024, on the very next day after the February 20th contempt proceeding, Father facilitated the required payment via his girlfriend and was released from custody.

Father then filed a timely appeal to the February 20, 2024 Order on March 19, 2024.

---

[36] *Id.*

[37] *See* February 20, 2024 Order of Court – Contempt (Non Agree).

[38] *See* March 2, 2023 Recommendation (Generic).

-11-

On April 1, 2024, the undersigned issued an Order directing Father to file a Concise Statement of Matters of Errors Complained of on Appeal, as he had failed to do so promptly.

Father filed his Concise Statement on April 23, 2024.

Despite the fact that this child support appeal does not qualify for "children's fast track" treatment, this Opinion is filed approximately sixty (60) days following receipt of Father's Concise Statement.

## ISSUES

Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i), Father raised the following issues in his Concise Statement of Errors Complained of on Appeal:

1. Finding of Contempt: In order to be found in contempt of court, there needs to be proof of willful disregard of a court order. Willful contempt means that the contemnor was aware of the court order, had the ability to follow the specifics of the order, and chose not to without any mitigating circumstances. Defendant/Appellant argues that the trial court failed to inquire into his present ability to pay and the trial court abused its discretion by imposing an onerous purge condition for the contempt. The trial court was aware of the pending petition to modify the support order due to substantial and material change in circumstances. A court cannot impose a coercive sentence conditioned on the contemnor's performance of an act which is incapable of performance. To impose civil contempt the trial court must be convinced beyond a reasonable doubt from the totality of the evidence presented that the contemnor has the present ability to comply with the order.
2. Ability to pay: Defendant/Appellant argues that the trial court erred by imprisoning him without rendering findings of fact that he had the financial ability to pay the fine and costs and that he willfully refused to pay. The order did not set forth any legal reasoning, findings of fact, or conclusions of law. Although the Defendant/Appellant indicated that he could and has borrowed money from family, the court failed to find – as our law requires – that he alone had the financial ability to pay the outstanding fines and costs.
3. Allowing Defendant access to resources to pay purge account: An order committing a respondent to jail for civil contempt of a support order shall specify the conditions the fulfillment of which will effect in the release of the respondent. In disposing of matters promptly, efficiently and fairly, a judge must demonstrate due regard for the rights of the parties to be heard and have issues resolved without unnecessary cost or delay. Defendant/Appellant argues that the trial court abused its discretion in failing to issue to order in a timely fashion and failing to allow the Defendant access to fulfil the conditions. The Judge [sic] failed to devote adequate time to judicial duties for prompt disposition of the court's business. This delay led to unnecessary costs for the Defendant, as well as denial of phone use or any outside contact for 24 hours.

-12-

4. Calculation of counsel fees: The Defendant/Appellant argues that the trial court erred in its calculation and award of counsel fees without any reason or explanation. Fees incurred during the previous contempt hearings were shown with reason and calculation. Fees ordered to be paid during said hearing were nearly doubled without cause. Additionally, counsel fees should be based on financial needs, relative financial positions, and needs of the parties. The trial court failed to consider the totality of the circumstances and failed to fashion an appropriate award.

5. Failure to appoint counsel: Upon the trial court's determination at the civil contempt hearing that there is a likelihood of imprisonment for contempt, the court must appoint counsel and permit counsel to confer with and advocate on behalf of the Defendant at a subsequent hearing. The trial court abused its discretion in failing to ascertain whether Defendant was entitled to court appointed counsel.

## STANDARD OF REVIEW

The standard of review for an Order entered in a child support contempt matter, after the trial court has carefully analyzed all of the facts in the matter at hand, is similar to that standard of review of a civil contempt order. The applicable standard is as follows:

> [The Superior Court's] review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. [39] *"If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused."* [40]

As demonstrated by the Notes of Testimony, for all three of Father's Court appearances before the undersigned, the undersigned carefully applied the necessary law and implemented an extensive line of questioning and inquiry as to arrive at the proper disposition. Additionally, the Notes of Testimony for all of the three proceedings will demonstrate that the undersigned exercised no partiality, prejudice, bias or ill will. On the contrary, the record will show that the undersigned exercised significant leniency, providing Father with numerous opportunities over a five month

---

[39] *Bold v. Bold*, 207 Pa. Super. 365 (2007).

[40] *Gates v. Gates*, 967 A.2d 1024, 1028 (Pa. Super. 2009).

-13-

time period to achieve compliance with the child support Order's *and* declining to direct the payment of any additional arrearages except for the cumulative of monthly payments that were due from the May 25, 2023 "Final Order."

It is necessary to distinguish a criminal contempt from a civil contempt in this child support matter.

> *The determination of whether a particular order contemplates civil or criminal contempt is crucial, as each classification confers different and distinct procedural rights on the defendant. There is nothing inherent to a contemptuous act or refusal to act which classified the act itself as 'criminal' or 'civil.' The distinction between criminal and civil contempt is rather a distinction between two permissible judicial responses to contumacious behavior. These judicial responses are classified according to the dominant purpose of the court. If the dominant purposes is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with the decree of the court are civil in nature. The purpose of a civil contempt proceeding is remedial. Judicial sanctions are employed to coerce the defendant into compliance with the court's order, and in some instances, to compensate the complainant for losses sustained.*
>
> *The factors generally said to point to a civil contempt are these: (1) Where the complainant is a private person as opposed to the government or a governmental agency; (2) where the proceeding is entitled in the original . . . action and filed as a continuation thereof as opposed to a separate and independent action; (3) where holding the defendant in contempt affords relief to a private party; (4) where the relief requested is primarily for the benefit of the complainant; and (5) where the acts of contempt complained of are primarily civil in character and do not themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion.*[41]

In a child support matter, the Court looks to 23 Pa.C.S. § 4345, *"Contempt for noncompliance with a support order"*, for the authority to impose sanctions as follows:

> *(a) General rule: A person who willfully fails to comply with any order under this chapter . . .may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:*
>
> *(1) Imprisonment for a period not to exceed six months.*
>
> *(2) A fine not to exceed $500.*

---

[41] *Lachat v. Hinchcliffe*, 4769 A.2d 481, 487-88 (Pa. Super. 2001) (internal citations omitted).

*(3) Probation for a period not to exceed one year.*

A contempt order used to coerce a parent into paying a child support obligation and arrearages is properly characterized as civil. [42] As the contempt in this appeal involves Father's non-payment of child support, the matter is clearly that of civil contempt.

Pennsylvania Appellate Courts have held that: *"[t]o be found in civil contempt, a party must have violated a court order.*[43] In turn, *"the complaining party must show, by a preponderance of the evidence, that a party violated a court order."* [44] *"The alleged contemnor may then present evidence that he has the present inability to comply and make up the arrears."* [45] When the alleged contemnor presents evidence that he is unable to comply with the order *"the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced **beyond a reasonable doubt**, from a totality of the evidence before it, the contemnor has the present ability to comply.* [46]

In the present action, there were numerous enforcement proceedings and Father was found to be in contempt of court no less than three (3) times prior to the imposition of imprisonment. Throughout all of the proceedings, Father had an opportunity to demonstrate his inability to pay. On the contrary, however, Father's testimony and the complete record of the matter demonstrated, that Father was willfully non-compliant and that he chose to prioritize the payment of other

---

[42] *See Barrett v. Barrett*, 470 Pa. 253, 260 (1977).

[43] *Hyle v. Hyle*, 868 A.2d 601, 604 (Pa. Super 2005) (citing *Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001)).

[44] *Id.* (citing *Sinaiko v. Sinaiko*, 664 A.2d 1005, 1009 (Pa. Super. 1995)).

[45] *Id.* (citing *Barrett v. Barrett*, 470 Pa. 253 at 264 (1977)).

[46] *Id.* at 604-605 (quoting *Barrett v. Barrett*, 470 Pa. at 264 (1977)).

expenses over the payment of child support. Accordingly, the undersigned was convinced beyond a reasonable doubt of Father's ability to comply with the Order.

Further, since the proceeding had a likelihood of imprisonment, the Court was mindful of the Pennsylvania appellate courts standard for the appointment of counsel which is as follows:

> *[U]pon the trial court's determination at the civil contempt hearing that there is a likelihood of imprisonment for contempt and that the defendant is indigent, the court must appoint counsel and permit counsel to confer with and advocate on behalf of the defendant at a subsequent hearing. An indigent defendant has the option of knowingly, intelligently, and voluntarily waiving that right to appointed counsel.* [47]

As such, the undersigned verified that Father had informed his prior counsel that he would handle the contempt matter on his own (both from Father, via testimony, and his Counsel via the entry of a Rule to Show Cause). Father was informed of his right to counsel. He proceeded to waive his right to counsel and signed the Notice indicating his desire to proceed without a lawyer. In addition, with an assigned earning capacity of $90,000 per year (or even $70,000 as alleged by Father) he would not have met the income threshold required for representation of an indigent by the Public Defender's Office.

With all of the aforementioned legal standards and the history of this matter taken into account, it is respectfully suggested that the undersigned's contempt Order should be affirmed.

---

[47] *Commonwealth v. Diaz*, 191 A.3d 850, 862-63 (Pa. Super. 2018).

ANALYSIS

**I.** **The Court was convinced beyond a reasonable doubt that Father was in willful contempt of the child support Order. Throughout three separate hearings before the undersigned, over a span of five months, Father was provided with considerable leniency and the opportunity to be compliant with the Order.**

As stated in this Opinion, *supra,* there had been four (4) contempt hearings before Judges, and seven (7) enforcement proceedings before DRO Hearing Officer's' over the past one year time period to address the issue of Father's lack of compliance with the support Order's. [48]

By the time the Order of February 20, 2024 was entered, finding Father in contempt for yet a third time, and ultimately directing incarceration, there had been substantial testimony and evidence that Father was capable of paying the Order.

The Court was extremely familiar with this particular support matter having reviewed the DRO record and having personally conducted numerous contempt proceedings (the "*Factual and Procedural History*" section, *supra,* thoroughly sets forth this record).

Father was repeatedly questioned about his employment status and income during the proceedings. There had been no change in Father's unchallenged income determination from the May 25th "Final Order". In addition, the record reflected that Father's father was paying his $1,900 mortgage payment each month and his girlfriend was supplementing his lifestyle with her payment of "extras".

Father was provided with numerous opportunities to pay the required monthly support and, at each turn, forced the Court to conduct numerous and repetitive enforcement proceedings.

---

[48] *See* February 20, 2024 Notes of Testimony pg. 5.

During each of the three Court proceedings, the Court demonstrated considerable leniency in not ordering that Father pay one cent over and above the monthly payment that was cumulatively due from the May 25th "Final Order" (with credit being provided for each of the support payments Father had paid since that date). Although clearly eligible for collection, there was no imposition of any additional amounts to be paid towards the substantial arrearages (totaling over $18,600 at the time of the Order subject to this appeal). [49]

While the undersigned was aware that Father filed a Petition to Modify, Father filed it a mere four months after the "Final Order" by Judge Demchick-Alloy *and* on the eve of the October enforcement proceedings (which had been scheduled as a follow up to the September 26th Order). The mere filing of a Petition to Modify does not justify Father not making the monthly payments pursuant to the existing Order; particularly here where Father's Petition to Modify appeared to be merely a defensive move to the enforcement proceedings *and* a *"redo"* and *"second bite of the apple"* from a complete round of support proceedings (that had just recently been completed a mere four months previously). On the contrary, through the testimony before the undersigned, Father demonstrated no change in his income situation that would justify a deferral of the enforcement proceedings.

At each of the three contempt hearings, a review of Father's paystubs demonstrated further support of the undersigned's decision that Father had an ability to pay the Order. The paystubs were placed into the record of each proceeding as "Exhibit D-1." [50]

---

[49] *See* February 20, 2024 Notes of Testimony pg. 9-15.

[50] *See* September 26, 2023 Notes of Testimony, "D-1", pg. 24; *see also* December 20, 2023 Notes of Testimony, "Exhibit D-1", pg. 38 and February 20, 2024 Notes of Testimony "Exhibit D-1," pg. 29-37.

In each instance, Father was clearly capable of making the child support payments under the May 25, 2024 "Final Order" as well as the purge amounts being directed at each juncture. [51]

Accordingly, the undersigned was convinced beyond a reasonable doubt that Father should be held in contempt. He had the ability to pay his monthly child support and the purge amount of $2,500. In addition, Father was provided with a thirty (30) day time period to pay counsel fees and a miniscule direct payment to Mother (to compensate her for her lost wages to be present at the contempt proceedings). [52]

Therefore, it is respectfully suggested that the undersigned's Order should be affirmed.

II. **Each of the three contempt Orders were entered after record hearings, at the very conclusion of the hearing, and on the record. The Court was clear in the rationale for the holding and each Order specifically included the amount required by Father to purge the contempt. Upon remand to Montgomery County Correctional Facility, Father was provided with resources necessary to facilitate payment and did so within 24 hours.**

Father first states that "An order committing a respondent to jail for civil contempt of a support order shall specify the conditions the fulfillment of which will effect in the release of the respondent." [53] The February 20, 2024 Order specifically requires the payment of $2,500 and remands Father to the Montgomery County Correctional Facility until he pays said amount. [54] There is no clearer way to disprove Father's statement. The Order in and of itself specifically states how Father would be released from Montgomery County Correctional Facility. Father

---

[51] *See* February 20, 2024 Notes of Testimony pg. 12 (Father indicates that he makes $70,000.00 a year, showing that he is clearly able to make the payments required under the June 9, 2023 Order).

[52] *See* February 20, 2024 Notes of Testimony pg. 23-24.

[53] *Id.*

[54] *See* February 20, 2024 Order of Court – Contempt (Non Agree).

-19-

received a copy of the Order at the conclusion of the hearing. And, Father facilitated the required payment within 24 hours. This statement by Father is blatantly false.

Father states that the undersigned did not issue an order in a timely fashion and allow for Father to fulfill its conditions. He also states that the undersigned did not devote adequate time to the matter. [55] Father had been in front of the undersigned three previous times for contempt over a four month time period. [56] Father was always provided with an Order as to how he could purge his contempt at the conclusion of each hearing.

Ultimately, Father chose to disregard the December 20, 2023 Order up to the date of the rescheduled February 20, 2024 hearing. A hearing was conducted and, ultimately, *after four contempt hearings and seven DRO enforcement proceedings*, Father was remanded to Montgomery County Correctional Facility. The Order was issued at the conclusion of the hearing and Father was provided with a copy on his way to the holding area.

Lastly, Father alleges that the undersigned's delay caused Father "unnecessary costs as well as no use of the phone and no outside contact for twenty-four (24) hours." There is no evidence how any action by the undersigned resulted in Father having to bear any kind of costs other than payment of the purge amount, attorney's fees, and lost wages. Additionally, once taken into custody by Sheriff Deputies, Defendants are provided with access to a telephone both at the detention center in the Courthouse and then again upon arrival at Montgomery County Correctional Facility. At no time did Father allege any difficulty in making telephone calls either to DRO or to the undersigned's Chambers. In actuality, Father facilitated the required payment within 24 hours, via his girlfriend, and was released the following day.

---

[55] *See* April 24, 2023 Superior Court Documents.

[56] *See* February 20, 2024 Notes of Testimony pg. 5.

Therefore, it is respectfully suggested that the undersigned's Order should be affirmed.

**III.    The Court may award counsel fees in a child support enforcement matter. Mother was awarded an appropriate amount towards her counsel fees (based upon the representation of her Counsel on the fees that were expended to enforce the Court's Orders). The counsel fees awarded were cumulative to the three court proceedings that were conducted.**

Father's fourth matter complained of revolves around Father's requirement to pay counsel fees.

Father argues that *"counsel fees should be based on financial needs, relative financial positions, and needs of the parties. The trial court failed to consider the totality of the circumstances and failed to fashion an appropriate award."* [57]

The standard Father asserts is not accurate in a child support contempt proceeding.

This was not an equitable distribution or alimony hearing where that standard is, in fact, a consideration.

A similar legal theory was advanced by Father during the February 20th proceedings as follows:

> DEFENDANT: "In those nine weeks, I have been charged for $1,196.31 in APL, which would go towards counsel fees.
>
> THE COURT: What does that mean?
>
> DEFENDANT: ". . . it means I'm getting double charged for counsel fees. I'm paying $576 a month in counsel fees."
>
> THE COURT: What do you mean you're paying $560 a month for counsel fees.
>
> DEFENDANT: For APL.
>
> THE COURT: Well, this is separate and apart from that. You're paying counsel fees for these proceedings because you're not paying the child support. Because you're not paying the child support, you're taking up my time, the Court's time, and you're taking up her attorney's time to make sure you pay the support. It has nothing to do with APL. That APL is for the divorce case . . . [58]

---

[57] *See* April 24, 2023 Superior Court Documents.

[58] *See* February 26, 2024 Notes of Testimony pg. 9-10.

-21-

Father's misguided legal argument in this instance reflects an objective to "run up" Mother's counsel fees in the child support case to justify his payment of APL in the divorce case which will be addressed, *infra*, in the Section V., *"Counsel Fees."* [59]

This was a support contempt proceeding for which Pennsylvania Courts have been clear about the standard in awarding counsel fees. A judge in Pennsylvania may award counsel fees to a party if the conduct of the other party is arbitrary, vexatious, or in bad faith, or if the party's conduct during the pendency of the matter is dilatory, obdurate, or vexatious. [60]

In this case it was clear that Father was alleging a reduction in his income based on a reduction of his work hours and/or a new custody schedule. A change in a parent's custody schedule is not sufficient basis to reduce income. Father made this same argument during the proceedings for the establishment of the child support Order. The Support Hearing Officer dismissed that argument and Father filed Exceptions. The Judge dismissed that same argument and Father did not appeal. At the same time that he argued for a reduction in income, his father (previously President of the same company where he worked) provided Father with an amount that was strikingly equivalent to the amount of the income reduction (and thereafter just paid Father's mortgage payment instead). Father's car payments were paid and he managed to travel on vacation trips. [61]

---

[59] The payment of APL in a divorce proceeding is intended to place the parties on "equal footing" with regard to their respective incomes. It is not intended to "cover" a Defendant's objective to generate unnecessary counsel fees for the other party just to ensure the payment of child support.

[60] *See* 42 Pa.C.S. § 2503; *see also Maurice A. Nernberg & Assocs. v. Coyne,* 920 A.2d 967 (Pa. Commw. 2007); *see generally Dong Yuan Chen v. Saidi,* 100 A.3d 587 (Pa. Super. 2014).

[61] *See* Notes of Testimony pg. 12-14.

Father's non-payment of support, and his income reduction, were clearly not coincidental. It is best described by the acronym "SIDS", standing for *"sudden income deficiency"*, that frequently seems to inflict a payor just after a divorce is filed. Family Court judges are all too familiar with this syndrome that occurs in child support actions.

Father's conduct was clearly obdurate and vexatious. Additionally, the fact that the parties have been before the undersigned three (3) times before clearly shows negligent behavior on Father's part and mere apathy when it comes to his duty to pay child support.

The award of counsel fees is well within the standard provided by Pennsylvania law.

Father also erroneously states that the counsel fees were nearly doubled "without cause." [62]

The reason the fees were increased is because Father originally did not pay when originally ordered in the September 26th Order. This is clear from the testimony at the hearing and has no merit. [63]

Therefore, it is respectfully suggested that the undersigned's Order should be affirmed.

IV.    **Father knowingly, willingly and voluntarily waived his right to counsel as demonstrated by his signed *"Notice of Right to Counsel and Hearing"* Form waiver.**

Father's fifth error complained of involves the right to counsel. [64]

The record reflects that Father previously had legal counsel and that he informed his lawyer that he would handle the contempt proceedings himself. Upon learning that Father would be representing himself, the Court took immediate steps to ensure that Father was provided with

---

[62] *See* April 24, 2023 Superior Court Documents.

[63] *See* February 20, 2024 Notes of Testimony pg. 23.

[64] *Id.*

the "*Notice of Right to Counsel and Hearing*" Form and, further, specifically confirmed that

Father had signed the right to counsel wavier:

> *THE COURT: Has the right to counsel been provided?*
>
> *MS. COLANTUNO: Yes, Your Honor. It was provided prior to the hearing today.*
>
> *THE COURT: Today?*
>
> *MS. COLANTUNO: Yes, Your Honor. He's been provided a copy of the right to counsel as well.* [65]

As indicated, *supra*, the standard in a civil contempt matter, where the possibility of imprisonment is present is as follows:

> *[U]pon the trial court's determination at the civil contempt hearing that there is a likelihood of imprisonment for contempt and that the defendant is indigent, the court must appoint counsel and permit counsel to confer with and advocate on behalf of the defendant at a subsequent hearing. An indigent defendant has the option of knowingly, intelligently, and voluntarily waiving that right to appointed counsel.* [66]

On this appeal, after he executed a waiver of counsel and he was remanded to the

Montgomery County Correctional Facility, Father now makes the claim on this appeal that he

should have been appointed counsel. [67]

The Court in Montgomery County makes it a standard practice to provide Defendants

with the notice to their "right to counsel" at all child support proceedings where the prospect of

incarceration is a possible sanction. In confirmation that the notice is provided, a Defendant is

required to sign the waiver Form.

---

[65] *See* September 26, 2023 Notes of Testimony pg. 12-13.

[66] *Commonwealth v. Diaz*, 191 A.3d 850 (Pa. Super 2018).

[67] *Id.*

-24-

This case was handled no differently. Father was provided with the notice to his right to counsel. [68] Father elected to proceed *pro se*. [69]

In point of fact, the undersigned actually deferred the sanction of incarceration at the September 26, 2023 hearing, given Father had just been provided with the notice and waiver at that proceeding, specifically stating as follows:

> THE COURT: *Unfortunately, since he's not here* [Father's prior counsel] *and the*
>
> *right to counsel was just provided this morning, we'll have to do this in another*
>
> *step.* [70]

The Court further confirmed that Father had received the right to counsel, and reinforced the possibility of incarceration, at the December 20, 2023 proceeding in the following exchange:

> THE COURT: *Has he been provided with a notice of counsel?*
> HEARING OFFICER: *Yes. He was provided with the right to counsel at the last hearing.*
>
> .        .        .
>
> THE COURT: *Just so we're clear, sir, if the payment is not made by that date, on the January 5ᵗʰ date, or arrangements made prior to Court commencing on January 9ᵗʰ, the next step of this would be incarceration. All right?*
>
> DEFENDANT: *All right.* [71]

At no point, during any of the proceedings, did Father indicate that he wished to rescind his waiver and retain legal counsel such that this issue should be deemed waived.

Accordingly, it is respectfully suggested that the undersigned's Order should be affirmed.

---

[68] *See* September 26, 2023 Notes of Testimony pg. 12-13.

[69] *See* September 26, 2023 Right to Counsel (provided to Father by Montgomery County Domestic Relations).

[70] *See* September 26, 2024 Notes of Testimony pg. 14

[71] *See* December 20, 2023 Notes of Testimony pg. 35

## V.    Counsel Fees

In this child support contempt appeal, Father is essentially attempting to re-litigate his income determination from the May 25, 2023 "Final Order" which he, and his legal counsel at the time, failed to appeal.

Throughout numerous contempt proceedings, all-the-while not complying with the payment of child support, Father raised the same issues over and over again with regard to his income that had just been litigated to finality a mere few months previously.

Instead of appealing the May 25, 2023 "Final Order", Father used the contempt proceedings as his "soap box" to challenge his income finding. Then, in the midst of the protracted contempt proceedings, Father files a Petition to Modify to both bring a halt to the contempt proceedings and to restart the support establishment process yet again (having just reached finality a few months prior).

Notably, throughout the protracted contempt proceedings before the undersigned since September 2023, Father has been self-represented while Mother has been compelled to engage legal representation and to pay attorney fees.

A significant dynamic in Family Court, occurring in ever more frequency, presents itself where self-represented litigants file and refile pleadings and appeals in an attempt to re-litigate the same issues. In many cases, as with this one, the same issues are being re-litigated within mere months of the last set of proceedings.

The result is to drain an already heavily burdened family docket which, in turn, impacts judicial time to devote to other family cases facing significant issues. It also represents an underlying strategy whereby a self-represented litigant forces the other parent to expend funds on legal fees to "wear them down" financially.

By the time the Plaintiff in a child support case pays an attorney for representation, the child support that ultimately reaches their kitchen table is whittled down to possibly nothing.

Without any consequences for this obdurate conduct, both the Court and the other parent are at the mercy of self-represented litigants for "groundhog day" litigation.

In order to prevent Father from this constant frivolous litigation, there is the necessity for the imposition of sanctions; specifically that of counsel fees.

In *Suzanne D. v. Stephen W.*, the Superior Court upheld an award of attorney's fees by the trial court; there, the obligor, having not incurred any legal fees in the support action, was found by the trial court to have extended the litigation to the detriment of mother's financial ability to support the children. [72]

Factors to be considered when awarding legal fees include whether the conduct of the obligor impeded entry of a final support order and whether the obligor presented a reasonable defense. [73]

In the case at hand, just as in *Suzanne D.*, the same circumstances are present that would make an award for attorney's fees to Mother reasonable. Mother, already at a significantly lower income level than Father, is forced to retain counsel and defend against this appeal.

The law regarding attorney's fees in Pennsylvania states that *"if an obligee prevails in a proceeding . . . to obtain a support order, the court may assess against the obligor . . . reasonable attorney fees . . . incurred by the obligee."* [74]

---

[72] *Suzanne D. v. Stephen W.*, 65 A.3d 965, 975 (Pa. Super 2013).

[73] *See Id.* at 975.

[74] 23 Pa.C.S.A. § 4351(a).

Note that *"[e]ven when the obligee prevails counsel fees are not automatic, but instead are contingent upon discretion of the court. "* [75] In using said discretion, the Court must consider *"the totality of relevant circumstances that informs the determination of whether to award counsel fees. "* [76]

The award of additional counsel fees in this matter would be predicated less on Father's non-retainer of counsel, but rather on the needlessly repetitious nature of Father's arguments.

Accordingly, provided that this Court agrees with this analysis, the undersigned takes the unusual step of requesting that the matter be remanded for the sole purpose of assessing Father's reimbursement of the reasonable counsel fees that Mother has been forced to unnecessarily incur to defend on this matter in this appeal (with Father's repeated re-litigation of unmerited and irrelevant arguments).

This may serve as an effective deterrent for prospective vexatious conduct both by Father in this case and for other self-represented litigants who engage in the same behavior in other family court cases.

---

[75] *Bowser v. Blom*, 569 Pa. 609, 807 A.2d 830, 835 (Pa. 2002).

[76] *Id.* at 836.

## CONCLUSION

For all of the reasons set forth above, this Court respectfully requests the undersigned's

Order of February 20, 2024 be affirmed.

**BY THE COURT:**

_____
DANIEL J. CLIFFORD, J.

**Copies sent via Domestic Relations Office to:**
Kelley Menzano Fazzini, *Esquire*
Sean Nonemacher, *Pro Se*

**Copies sent via Chambers to:**
Court Administration – Family (*Interoffice*)
Montgomery County Domestic Relations Unit

*N. Gefen*
Judicial Assistant